## PILGRIM DISTRIBUTING CORPORATION, ETC., Plaintiff-Appellee, v GALSWORTHY, INC., Defendant-Appellant.

Ohio Appeals, First District, Hamilton County.

No. 6750.   Decided March 10th, 1947.

Aubrey N. Foiles, Cincinnati, Harmon, Colston, Goldsmith & Hoadly, Cincinnati, and Henry B. Street, Cincinnati, for plaintiff-appellee.

Dinsmore, Shohl, Sawyer & Dinsmore, Cincinnati, and F. B. McConaughy, Cincinnati, for defendant-appellant.

## OPINION

By MATTHEWS, PJ.:

This is an appeal on questions of law from an order of the Common Pleas Court overruling a motion to discharge an attachment and the appellee raises in limine the question of the jurisdiction of this Court, as conferred by Section 6, Article IV of the Ohio Constitution, to review such an order.

Starting with **Farmers Bank & Trust Co. v Cooper Tire & Battery Co., 37 Oh Ap 54,** this Court has held in a series of cases that an order overruling a motion to discharge an attachment is a final order affecting a substantial right and that Courts of Appeal have jurisdiction to review such an order:— See, **Price Hill Collieries Co. v Old Ben Coal Corporation, 38 Oh Ap 151; Devine v Detroit Trust Co., 52 Oh Ap 446; Toledo Paper Box Co. v Jay Lane, Inc., 20 Abs 334,** and **Hamilton v Temple, 60 Oh Ap 94.**

We have reconsidered the reasons assigned for our holdings in these cases, and have reached the same conclusion. As long ago as 1855, the Supreme Court in **Watson v Sullivan, 5 Oh St 43,** decided that:

"An order of the court of common pleas, discharging an attachment against a resident as to the whole of the property attached, is an order affecting a substantial right made in a special proceeding, which may be reversed, pending the action in which the order of attachment was made."

And in the opinion by Judge Kennon, who was one of the authors of the Code of Civil Procedure, the subject of the meaning of the phrase "Special Proceeding" was discussed at length and the conclusion reached that an attachment was a special proceeding, and, therefore, an order discharging an attachment could be reviewed by the district court on proceedings in error. The court also held that the order discharging the attachment affected a substantial right. We can see no distinction as to the substantial right affected between an order discharging and an order refusing to discharge. The parties were equally interested in having the jurisdiction of the Court over the res determined, and equally prejudiced by a void order. The only difference is that the prejudice is shifted from one to the other.

See, also: **Harrison v. King, 9 Oh St 388, at 395,** in which the Court reviewed an order overruling a motion to discharge, and **Gans v Thompson, 11 Oh St 579,** in which the Court reviewed an order discharging an attachment.

Speaking of the meaning of the word "Judgment" as used in **Section 6 of Article IV of the Ohio Constitution,** the Supreme Court said in **Chandler & Co. v Southern Pacific Co., 104 Oh St 188,** at **pages 192 and 193:**

"We appreciate the gravity of the legal problem here involved. But in its solution this court cannot adopt a construction so narrow as to deprive litigants of remedies enjoyed since the adoption of our civil code of procedure. Our bench and bar of this and preceding generation knew that the definitions of 'judgments' and 'final orders' had been engrafted upon our civil code and that our remedial procedure embraced the review of final orders; and undoubtedly those who framed the Constitution of 1912 did not contemplate a restriction of those civil remedies continuously employed for a period of more than sixty years. While we may not permit the conferment of legislative jurisdiction upon the court of appeals under our present constitution, it is permissible to define the term 'judgments' as used in the constitution. At common law the term was used in a restricted sense. Lexicographers and courts have variously defined it, some giving it a restricted and others a broad and comprehensive meaning. We are satisfied that in order to effectuate the purpose of those who framed this amendment, and in order to promote the object of the people in its adoption, a technical definition should be disregarded and a broad and comprehensive meaning should be adopted. We, therefore, hold that it comprehends decrees and final orders rendered by a court of competent jurisdiction and which determine the rights of parties affected thereby. Were we to arrive at any other conclusion than herein announced a review of a large number of final orders affecting the substantial rights of litigants would be denied."

That the General Assembly that enacted that Appellate Procedure Act, effective January 1st, 1936, considered an order either discharging or refusing to discharge an attachment as a reviewable order is clear, because as a part of that Act it amended §11864 GC, to conform to it by providing that an order discharging or refusing to discharge an attachment "May be appealed on **questions of law."**

However, we find our conclusion on this point in conflict with **Rothman v Selden, et al., 37 Oh Ap 408**, and **Halloway v Mahoning Auto Co., 14 Abs 172**, decided by Courts of Appeal of other districts, and, for that reason, will certify this case on that ground to the Supreme Court. The decisions in those cases were based somewhat on interpretations of the opinion in **Pullman Co. v Insurance Co., 107 Oh St 283**. However, the point here presented was not mentioned in the syllabus and as we construe that part of the opinion relied on in those cases, the Court was pointing out that one of the statutes under consideration was special and the other general, and that, therefore, the special statute controlled. Inasmuch as our conclusion is that this Court has jurisdiction, we will pass upon the errors assigned.

(1) It is claimed that the order of attachment was issued before the action was commenced and is void for that reason.

The facts are that the petition with praecipe attached was duly filed in the clerk's office. In addition to the usual wording of a praecipe for a summons, there was a direction to mail a copy of the petition to defendant at 414 Elizabeth Avenue, Newark, New Jersey. At some time after the praecipe was filed, an unidentified person drew a line in ink, extending from the left hand lower corner to the right hand upper corner, and then crossed this by an open loop at the end near the signature of the Attorney and with the closed end at the upper left hand corner. When the attorney filed the petition, a conversation took place between him and a deputy clerk concerning instructions to the sheriff and the attorney undoubtedly told the clerk that the defendant was a foreign corporation and could not be served in Hamilton county. This conclusion is in accord with all the evidence and is fortified by the fact that at the same time the petition was filed an affidavit in attachment was filed in which it was averred that the defendant was "a foreign corporation, that said defendant is a nonresident of and is not domiciled in the state of Ohio." The appearance docket shows that the affidavit in attachment was filed and on the same day a writ of attachment issued. There is no notation on the appearance docket of the filing of the praecipe for summons, or that a summons was issued. The evidence shows that a summons was prepared but never delivered to the sheriff. Apparently at the time the summons was prepared by the clerk, he stamped on the petition the word "Issued," twice, but any implication therefrom that a summons was delivered to the sheriff is contrary to the undisputed testimony of all the participants in the transaction.

As the praecipe had no marks of cancellation or withdrawal superimposed on it at the time it was filed placing them thereon subsequently, no matter by whom, without the leave of the court would be ineffective to change the praecipe as originally filed. **Rice & Co. v Pike, 117 Oh St 521.** We, therefore, must consider that although the praecipe was filed, the summons prepared by the clerk, it was not delivered to the sheriff. Constructive service was not started until August 9th, 1946, when an affidavit was filed. The affidavit in attachment was filed with the petition and the writ issued on the same day.

Did what was done constitute the commencement of the action at the time the petition was filed? If it did, the attachment is valid; otherwise, not.

By §11279 GC, it is provided that: "A civil action must be commenced by filing in the office of the clerk of the proper Court a petition, and causing a summons to be issued thereon."

The courts have had occasion to apply this section in several instances. In **Seibert v Switzer, 35 Oh St 661,** it was held, as stated in the syllabus:

"An attachment, under the civil code, is an auxiliary proceeding in an action, which may be sued out by the plaintiff, at or after the commencement of such action, by filing a petition and causing a summons to issue thereon.

"About 11 o'clock, A. M., an order of attachment was issued upon the filing of an affidavit and giving bond. It was served and returned about 3 o'clock, P. M., but no petition was filed until about 6 o'clock, P. M., of the same day. Held, that, the attachment was issued without authority of law, and as against other attaching creditors and lienholders gave no priority."

Recently, the Supreme Court discussed this section in **Crandell v Irwin, et al., 139 Oh St 463.** In the syllabus the Court said:

"**Sec. 11279, GC,** prescribes the manner of commencing a civil action, i. e., by filing in the office of the clerk of the proper court a petition and causing summons to be issued thereon."

And, at page 467, it is said of Seibert v Switzer, supra:

"It will thus be seen that the question in that case was the manner of commencing an action. Time was involved

only to the extent of showing that the plaintiff had gotten the cart before the horse, i. e., he had filed an auxiliary proceeding before commencing an action in the manner provided by statute. Of course, no jurisdiction could be obtained by attachment until plaintiff had followed the statute as to the manner of commencing a civil action."

It is also made clear in Rorick v Devon Syndicate, 307 U. S., 299, that §11279, GC, prescribes the way in which an action must be commenced and that the actual service of summons is not a part of it. If the petition is filed and a summons caused to be issued thereon the action is commenced regardless of whether the summons is served.

In **Shaffer v Shaffer, 69 Oh Ap 447,** the Court held that as an affidavit for constructive service was filed with the petition the action was commenced and that an attachment levied thereafter and before any summons was issued or publication made was not premature.

This case does not involve the statute of limitations or any other issue in which time is an element. It is not a question of when, but how to commence an action.

We have found no case in Ohio in which the facts were identical with the facts in this case. Here, no affidavit for constructive service was on file at the time the attachment was issued. A summons had been prepared by the clerk, but it was never delivered to the sheriff. If delivery to the sheriff was a necessary element of its issuance, then a summons had not been caused to be issued and the action had not been commenced. This would result even though the plaintiff had made an unequivocal demand upon the clerk to issue the summons. **McLaren v Myers, 87 Oh St 88.**

In other jurisdictions we find many cases on this subject and there is no conflict among them. All hold that the mere preparation of the summons by the clerk is not an issuance of it. To make it an issuance the summons must be delivered to the sheriff for the purpose of service. We content ourselves with citing a few of them. Woodstock v Whitaker, 146 Pacific Reporter (2d) (Nevada) 778, 780 and 781; White v Reed, 60 Mo. App., 380, at 385; McMaster v Ruby, 157 Pac., (Oregon) 782, at 784; Hoover Lines v Whitaker, 120 S. W. (2d) 983, at 986; Hufstedler v Harral, 54 S. W. (2d) 353, at 355; Borgen v Corty, 232 N. W., 512, at 513, 181 Minn., 349; Ferguson v Estes, 214 S. W., 465, at 466. Many other cases are cited in these cases to support their conclusion as to the meaning of "issuance" of a writ.

We hold that the attachment was levied before this action was legally commenced and is, therefore, void and should be set aside.

(2) The ground of attachment alleged in the affidavit is "that said defendant is a foreign corporation; that said defendant is a non-resident of and is not domiciled in the state of Ohio." The appellant contests the sufficiency of this averment as a ground of attachment. The appellee contends that the averment contains two equally valid grounds of attachment, to-wit:—that defendant is a foreign corporation, and also that it is a non-resident of Ohio.

By §11819, GC, it is provided that an attachment may be had upon any one of the following grounds: (1) "Excepting foreign corporations, which, by compliance with the law therefor, are exempted from attachment as such, that the defendant or one of said defendants is a foreign corporation; (2) Is not a resident of this state."

Turning then to §8625-17, GC, which determines what foreign corporations are exempt from attachment, we find that it provides that:

"A foreign corporation holding an unexpired and uncancelled license under this act shall not be subject to process of attachment under any law of this state on the ground that it is a foreign corporation or non-resident of this state."

A reading of §8625-17, GC, seems sufficient to make clear that if the defendant is exempt from attachment on the ground that it is a licensed foreign corporation, it is equally exempt on the ground that it is a non-resident of the state.

That it is necessary in order to state a ground of attachment based on fact that defendant is a foreign corporation to also aver that it has not been given exemption by compliance with the Ohio law governing foreign corporations, was settled by the case of **The Leavitt & Milroy Co. v Rosenberg Bros. & Co., 83 Oh St 230.** It is stated in the syllabus that: "In an affidavit for attachment under paragraph one of Section 5521, Revised Statutes, it is necessary to negative the exceptions in that paragraph."

At **page 239,** the Court said:

"It will be observed that the section does not provide for an attachment against all foreign corporations, but only against those that do not come within the exceptions. The

proceedings in attachment are statutory remedies, and it is too well settled to need the citation of authorities that where a statute confers a right or gives a remedy unknown to the common law that the party asserting the right, or availing himself of the remedy, must in his pleadings bring himself or his case, clearly within the statute. The statute does not provide for an attachment against all foreign corporations, but only on those that do not come within the exceptions, so that it is necessary to negative the exceptions in order that it may appear that the fact that the corporation is a foreign corporation is a ground of attachment."

That this rule is of long standing is evidenced by the case of Whitecraft v Vanderver, 12 Ill., 235, in which its application caused Abraham Lincoln to suffer a reversal.

We do not understand that appellee seriously disputes this rule, but rather contends that it has complied with it by the averment that the defendant is a "non-resident of and not domiciled in the State of Ohio."

In 23 Am. Jur., 42, et seq., it is said:

"It is undoubtedly true in a strict technical sense that such domicil, legal residence, or citizenship as a corporation may have is single in its essence and that a corporation can have only one, which is in the state of its origin and is fixed by its charter of incorporation. By analogy, this domicile may be compared to the domicile of origin of a natural person, as to which such person may exercise no choice; more properly, however, it may be said to be a domicile by operation of law."

And again, in 13 Am. Jur., 280, it is stated:

"The domicile of a corporation belongs exclusively to the state or sovereign under the laws of which it is created. A corporation can have no legal existence out of the boundaries of the sovereignty by which it is created. It exists only in contemplation of law and by force of the law of its creation; and where that law ceases to operate and is no longer obligatory, the corporation can have no existence."

Our conclusion is that the averment that the defendant foreign corporation is not domiciled in Ohio is the averment of a conclusion of law only and adds nothing to the averment that the defendant is a foreign corporation. It could have complied with all the laws of Ohio applicable to foreign

430

corporations and be entitled to exemption from attachment and still not be domiciled in this state.

(3) There was argued the question of whether the defendant had entered its appearance in this case, but we find it unnecessary to pass upon this question on this appeal from the order overruling the motion to dissolve the attachment. The acts which are claimed to be a general appearance took place some weeks after the writ of attachment was issued and, of course, could not operate retroactively to validate it. The defendant had entered a special appearance to contest the attachment and a general appearance could have no meaning in relation to the attachment. Should the plaintiff seek a personal judgment, it would then be pertinent to inquire whether the court had acquired jurisdiction in personam.

For these reasons, the order overruling the motion to discharge the attachment is reversed, and the cause remanded with instructions to sustain said motion and dissolve said attachment, and for further proceedings according to law.

MATTHEWS, PJ, ROSS and HILDEBRANT, JJ, concur in Syllabus, Opinion and Judgment.