Walter L. COMPTON, Jr., Appellee,

v.

**ALTON STEAMSHIP COMPANY, INC., Appellant.**

No. 78–1569.

United States Court of Appeals, Fourth Circuit.

Argued May 10, 1979.

Decided Oct. 5, 1979.

John B. King, Norfolk, Va. (Walter B. Martin, Jr., Vandeventer, Black, Meredith & Martin, Norfolk, Va., on brief), for appellant.

Ralph Rabinowitz, Norfolk, Va. (Rabinowitz, Rafal & Swartz, Norfolk, Va., on brief), for appellee.

Before RUSSELL, Circuit Judge, FIELD, Senior Circuit Judge, and COPENHAVER, District Judge, for the Southern District of West Virginia, sitting by designation.

DONALD RUSSELL, Circuit Judge:

The plaintiff/appellee merchant seaman Compton signed on for a foreign voyage aboard the vessel SS TEX, owned by the defendant/appellant Alton Steamship Co., Inc. but under bareboat charter to Bulk Food Carriers. The foreign voyage terminated at Norfolk, Virginia, on April 14, 1976, at which time the plaintiff was paid all his earned wages and a certificate of discharge from foreign articles was duly entered by a United States Shipping Commissioner.[1] The vessel then entered a shipyard at Norfolk for repairs and remained there until April 20. On that date the plaintiff returned to the vessel and was engaged for coastwise service.[2] The coastwise service ended on June 4, 1976. It seems agreed that the plaintiff was paid his wages for the period from April 20 to June 4, 1976. On October 25, 1976, the plaintiff, through his attorney, made demand on the defendant for payment of "wages plus room and meals allowances" for the six-day[3] period from April 14, 1976 to April 20, 1976, which was the period between the termination of the vessel's foreign voyage and the beginning of its coastwise voyage and the period when the vessel was laid up for repairs at the shipyard in Norfolk.

It was not until January 30, 1978, that the plaintiff filed this action against the defendant, seeking recovery for wages and fringe benefits for the period between April 14 and April 20, pursuant to his demand as made on October 25, 1976. In his complaint he stated the basis of his claim thus:

"According to the contract made for the benefit of the plaintiff between his union, the S.I.U. and Alton Steamship Co., Inc., the standard freight ship agreement, pursuant to Section 60 of said contract, plaintiff was owed wages plus room and meal allowances for the period of April 14, 1976 through April 20, 1976."

Paragraph 60 of the union contract, relied on by the plaintiff as the basis for his recovery in the action, provides that

"When a vessel is inactive in a United States port * * *. Should the vessel resume service within seven (7) days, the vessel's Unlicensed Personnel who return to the vessel, shall receive wages, room and meal allowances for the period for which they were laid off."

As explained by plaintiff's counsel at the May hearing, this provision gave the plaintiff a claim for wages, room and meal al-

---

[1] "Articles," as used in this connection, refers to the agreement "in writing or in print" which should be executed by every seaman before proceeding upon a foreign voyage under the terms of § 574, 46 U.S.C. Such "articles" should, by the provisions of the agreement, declare "the voyage or term of time for which such seaman shall be shipped."

[2] At the hearing on May 8, 1978, when damages were fixed, the plaintiff testified that he reported back to the vessel each day after April 14 "[t]o see if they wanted me back to work that day, your Honor. * * * They put me back to work on the day the Coast Guard discharge says so. * * * On the 4/20/76."

[3] Both parties assume that the days in question for which the plaintiff under the union contract seeks payment were "six." However, the plaintiff testified he was put back to work on April 20 and he was apparently paid for every day he worked from April 20 on. Moreover, he testified at the May 8 hearing that he was paid for April 14. The only days for which the plaintiff could really claim payment under the union contract, as hereafter set forth, would thus have been April 15, 16, 17, 18 and 19, or a total of five days.

lowances for the period between April 14 and April 20, since "what happened here is that they (meaning the plaintiff and presumably other seamen) did return to the vessel within seven days and they're owed wages, meal allowance and room for that period."

In the prayer of his complaint, plaintiff requested recovery of the wages and fringe benefits "as provided by the above-mentioned contract (between the union and Alton) and additionally, plaintiff claims penalty wages as provided by the United States statutes, two for one, for every day * * that defendant has refused and ignored, without just cause, payment of said wages * * *. Wherefore, plaintiff sues for total sum of FIVE THOUSAND DOLLARS ($5,000.00), his attorney's fees in reasonable sum herein, interest and any other amounts the Court may deem just."

The defendant Alton did not appear or answer the complaint within the stipulated time. Following request by the court of a status report by the parties, the plaintiff filed a motion for a default judgment. He gave notice of such motion to the defendant. The defendant not having appeared, default judgment on liability was taken on April 19, 1978 and hearing on damages was set for May 8, 1978. Notice of this later hearing on damages was given the defendant. Again, at this hearing on damages, the defendant was absent. In defendant's absence, the district judge proceeded to take testimony and to make a record on the damages rightfully due the plaintiff. The plaintiff testified and a number of official Coast Guard records were admitted as exhibits. The record thus made established that the plaintiff had terminated the foreign voyage under his articles on April 14 and was given an official certificate of discharge by a United States Shipping Commissioner attesting such. He was, also, paid all wages due him at the termination of such voyage. Thereafter, on April 20, he was "put back to work," for a coastwise voyage. Because within seven days after the termination of his foreign voyage, the vessel had "resume[d] service" and he had "return[ed] to the vessel," he claimed a

right to recover for the days between April 14 and April 20 under the union contract. The plaintiff testified that his daily wages on the vessel were $31.09, plus $21 for room and lodging, or a total of $52.09. Demand for payment of such wages for the period between April 14 and 20 was proved.

At this point in the hearing plaintiff's counsel asserted a right to recover penalty wages under § 596, 46 U.S.C. It is obvious that the district judge and plaintiff's counsel were uncertain about the right, or at least, the extent of the right, of the plaintiff to recover for the penalty under Section 596. Both the district judge and plaintiff's counsel took no note at this hearing of the fact that, both under the allegations of the complaint itself and the testimony offered at the damages hearing by the plaintiff himself, the claim was for wages claimed under the union contract for the interim between two voyages, one foreign and the other coastwise, but proceeded under the incorrect assumption that Section 596 was applicable to any claim by a seaman for wages. They, however, were doubtful about the date from which statutory penalty wages could be assessed. They identified the two voyages involved, the first of which was declared to be a foreign voyage terminating on April 14 and the second a coastwise voyage terminating on June 4, 1976. Both the district judge and plaintiff's counsel agreed at this hearing that they would "*have to use the coastwise voyage because that was the period after the period we claim,*" and that the commencement date for calculating the penalty under Section 596 would be June 4, 1976, the termination date of the coastwise voyage. It is obvious from this exchange that neither the district judge nor plaintiff's counsel knew that coastwise voyages were without Section 596, under the specific exception in § 544, 46 U.S.C. Plaintiff's counsel, however, somewhat demurred at the conclusion that the penalty wages should be computed from the termination of the coastwise voyage, telling the district judge "usually when you get double wage penalties, you get them from the date that there's an official de-

mand. That just seems to be the practice." It was then agreed by the district judge and plaintiff's counsel to extend the penalty award from October 25, 1976, the date of demand, to the date of the hearing May 8, 1978. Following that formula, they fixed the number of days involved as 560 days. Using the formula of 560 × $104.18 (double the $52.09) wage claim with allowances) they calculated the proper damages due the plaintiff at $58,340.80. At this point the district judge expressed concern whether the award could include an allowance for room and board. He said the statute "just talks about wages" and inquired of counsel whether that included "room and board." Counsel replied that "[t]hey have traditionally been considered that way." [4] Partially reassured, the district judge said:

"I would guess so. All right. Well, I'm going to enter judgment for $58,-340.80; and if the defendant thinks I'm wrong, they can move to vacate."

Both the district judge and plaintiff's counsel concluded the hearing with some humorous comments about the anticipated reaction of the defendant to the award. The district judge told the plaintiff's counsel that when the latter advised the defendant of the judgment he had "better stand back because they're going to fall over."

The award of a judgment of almost $60,-000, based on an actual claim that would not exceed much over $300 at the most, did "shock" the defendant into action. It filed a motion promptly within ten days after judgment to set aside the judgment. When that was denied, it filed anew and this also was denied. In support of its motions, the defendant offered an excuse for its failure to appear. In this showing, it said that at the time when the claim involved in the action arose, its vessel SS TEX was under charter to Bulk Food Carriers, "whose responsibility it was to pay crew wages." Because any responsibility to pay plaintiff's claim was that of Bulk Food Carriers, the defendant, as it received any pleadings or notices of motion, forwarded them to Bulk Food Carriers and, without any contrary indication, assumed that Bulk Food Carriers was attending properly to the defense of the action. In order to supplement this claim of excusable neglect on its part, the defendant requested of the district court the opportunity to offer supporting evidence. It, also, alleged that the district court had necessarily entered the judgment as a penalty award under § 596 under a mistake of fact and law. It based this contention first on the fact that, contrary to the district court's assumption, the penalty provisions of § 596, which provided the statutory predicate for the district court's award, is inapplicable to "vessels engaged in coastwise trade with certain exception, none of which apply to the SS TEX" by § 544, 46 U.S.C. For a second ground, it urged that a claim under a union contract for wages not earned under articles covering a transoceanic voyage is not within § 596. This exemption of coastwise trade under § 596 and the inapplicability of § 596 to claims not defined in the statute but authorized under a union contract rendered the district court, in defendant's view, "without jurisdiction to award penalties in connection with any wages due during the period April 15, 1976 through June 15, 1976." [5]

The district judge denied the motions to vacate the penalty award (as distinguished from the claim under the union contract which admittedly aggregated no more than $312.54). He dismissed the contention of the defendant that the penalty award was improper on three grounds. First, he held that "the defense that you [meaning the defendant] are attempting to assert now [i. e., the inapplicability of § 596] is an affirmative defense which should have been asserted at the time of the trial" and, if not asserted is "waived." Secondly, he seems to have construed § 596, as he later said in a letter to counsel explanatory of his ruling,

---

**4.** The judge was reading the statute correctly; the statute was limited to wages.

**5.** This period covered both the interim time between the two voyages and the time covered by the coastwise voyage which began on April 20.

to provide that "a seaman is entitled to the relief granted [under § 596] * * * in all instances save one," that one exception being "if he is in coastwise trade." He declared that under that construction the statute would be clearly applicable to this case since he concluded at the hearing "that the fact that this ship had some repairs done between foreign voyages puts it in intercoastal trade." Later, in his explanatory letter, the district judge added that the statute was, in his opinion, applicable because "[t]he refused wages which were the basis of this claim were earned prior to the entry into coastwise trade." The district judge did comment, in denying the motion that the award of $58,340.80 was "a heck of a lot of money for this guy to get for nothing." From this denial, the defendant has appealed.

In reviewing the district court's ruling, we begin by agreeing with the defendant that the district judge was mistaken about the scope of § 596. That statute has no application to wages earned while the vessel is on port time or undergoing repairs "in the interim between the completion of one voyage and the commencement of another and when articles are neither in fact signed nor required," as well as when the vessel is engaged in coastwise trade, as defined in § 544, 46 U.S.C. *Eaton v. SS Export Challenger* (4th Cir. 1967), 376 F.2d 725, 727; *Gardner v. The Danzler* (4th Cir. 1960), 281 F.2d 719, 722–23; *Giatilis v. The Darnie* (D.Md.1959) 171 F.Supp. 751, 753 (a seaman "is not entitled to recover wages under 46 U.S.C. §§ 596, 597, for any period beyond the end of the voyage"); *Ladzinski v. Sperling Steamship and Trading Corp.* (S.D.N.Y.1969), 300 F.Supp. 947, 959 (§ 596 has reference only to " 'earned wages under the contract memorialized by the shipping articles").[6] The claim for wages made by the plaintiff under the union contract arose after the termination of the foreign voyage under which he had signed articles, while

the vessel was engaged in repairs "in the interim between the completion of one voyage and the commencement of another." It was thus a claim which under the plain language of Judge Winter in *Eaton* was not covered by Section 596 and which could not support a penalty award under that section.

Moreover, the facts establishing the inapplicability of Section 596 to this claim are abundantly established in the record beyond any controversy. Indeed, they were clearly laid out in plaintiff's own presentation at the hearing to fix damages on May 8 as well as in the allegations of his complaint. The suggestion by the district court that the failure of the plaintiff's claim to fit the terms of the statute is an affirmative defense that must be plead by a defendant is plainly wrong; it is the obligation of the plaintiff, seeking recovery under the terms of a statute, both to plead and prove that his claim falls within the terms of the enabling statute.[7] The plaintiff did neither in this case. In the face of such failure, and the decisions of this court construing Section 596, the district court had no authority whatsoever to award penalty wages in this case. As a result of this plain mistake of law on the part of the district judge, the defendant has been saddled with an unconscionable judgment. If it be assumed that the defendant is liable under the union contract for a claim of either five or six days of wages, room and board, it could at most be liable for no more than $312.54. But, because of the district court's mistake it has suffered a judgment almost two hundred times that amount on the erroneous assumption that Section 596 authorized it. Is the defendant entitled to no relief against such an unconscionably unjust judgment? The plaintiff says not and the district court agreed. We disagree.

Rule 60(b), Fed.R.Civ.P. has invested federal courts with the power in certain

---

6. Quoting *Isthmian Lines, Inc. v. Haire* (5th Cir. 1964), 334 F.2d 521 at 523.

The history of § 596 is carefully spelt out by Judge Haynsworth in *Gardner v. The Danzler,* 281 F2d at 722–23.

7. *See* cases cited infra on pages 105 and 106.

restricted circumstances to "vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott v. United States* (1949), 335 U.S. 601, 614–15, 69 S.Ct. 384, 390, 93 L.Ed. 266; *Buckeye Cellulose Corp. v. Braggs Elec. Const. Co.* (8th Cir. 1978) 569 F.2d 1036, 1038; *Expeditions Unlim. Aquatic Ent., Inc. v. Smithsonian Inst.* (1974), 163 U.S.App.D.C. 140, 141, 500 F.2d 808, 809. The remedy provided by the Rule, however, is extraordinary and is only to be invoked upon a showing of exceptional circumstances. *Ackermann v. United States* (1950), 340 U.S. 193, 202, 71 S.Ct. 209, 95 L.Ed.2d 207; *Martinez-McBean v. Government of Virgin Islands* (3d Cir. 1977), 562 F.2d 908, 911; *Flett v. W. A. Alexander & Company* (7th Cir. 1962) 302 F.2d 321, 324, *cert. denied* 371 U.S. 841, 83 S.Ct. 71, 9 L.Ed.2d 77; *Silvers v. TTC Industries, Inc.* (E.D.Tenn.1974), 395 F.Supp. 1318, 1321, aff'd, 6th Cir., 513 F.2d 632; *Hughes v. Sanders* (E.D.Okl.1968) 287 F.Supp. 332, 334. In determining whether to exercise the power to relieve against a judgment under 60(b), the courts must engage in the delicate balancing of "the sanctity of final judgments, expressed in the doctrine of res judicata, and the incessant command of the court's conscience that justice be done in light of *all* the facts."[8] With a view to accomplishing this purpose, certain requirements have been established by the Rule and the courts that must be met by those seeking relief under this extraordinary remedy. Thus, courts require that a movant under Rule 60(b) assume the burden of showing a meritorious defense against the claim on which judgment was entered as a threshold condition to any relief whatsoever

under the Rule.[9] Further, the court should in every case give some, though not controlling, consideration to the question whether the party in whose favor judgment has been entered will be unfairly prejudiced by the vacation of his judgment.[10]

Assuming that a movant for relief under the Rule has established a meritorious defense, he must proceed to satisfy one or more of the six grounds itemized in the Rule on which a vacation of judgment may be authorized. These grounds include, among others, (1) mistake, inadvertence, surprise, or excusable neglect, (2) the voidness of the judgment, and (3) a final catch-all ground, "any other reason justifying relief from the operation of the judgment." These grounds for relief often overlap and it is difficult, if not inappropriate, in many cases to specify or restrict the claim for relief to a particular itemized ground. As one court has well put it, "[t]he rule [60(b)] is broadly phrased and many of the itemized grounds are overlapping, freeing Courts to do justice in hard cases where the circumstances generally measure up to one or more of the itemized grounds."[11] In fact, Professor Moore has suggested that exact "categorization" of ground for relief under the Rule "should be avoided except where the category is obvious or where exact choice is necessary to decision." 7 Moore's Federal Practice ¶ 60.27[1] at pp. 346–47.[12] But where the movant has shown a meritorious defense, the itemized grounds for relief under the Rule "are to be liberally construed in order to provide relief from the onerous consequences of defaults and default judgments. * * * Any doubts about whether relief should be granted

8. *Bankers Mortgage Company v. United States* (5th Cir. 1970), 423 F.2d 73, 77, *cert. denied,* 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (emphasis in text); *see also, Boughner v. Secretary of Health, Ed. & Welf., U.S.* (3d Cir. 1978), 572 F.2d 976, 977; *N.Y. State Health Facilities Ass'n, Inc. v. Carey* (S.D.N.Y.1977), 76 F.R.D. 128, 132–33.

9. *In re Stone* (10th Cir. 1978), 588 F.2d 1316, 1319; *Boughner v. Secretary of Health, Ed. & Welf., U.S.,* 572 F.2d at 978; *In re Miller* (E.D. Ill.1967), 262 F.Supp. 295, 297.

10. *Bonaventure v. Butler* (5th Cir. 1979), 593 F.2d 625, 626; *Erick Rios Bridoux v. Eastern Air Lines* (D.C.Cir.1954), 93 U.S.App.D.C. 369, 372, 214 F.2d 207, 210, *cert. denied,* 348 U.S. 821, 75 S.Ct. 33, 99 L.Ed. 647; *Tozer v. Charles A. Krause Milling Co.* (3d Cir. 1951), 189 F.2d 242, 246.

11. *Laguna Royalty Company v. Marsh* (5th Cir. 1965), 350 F.2d 817, 823.

12. *See also, Equitable Life Assur. Soc. of U. S. v. MacGill* (5th Cir. 1977), 551 F.2d 978.

should be resolved in favor of setting aside the default * * *." *Tolson v. Hodge* (4th Cir. 1969), 411 F.2d 123, 130; *Brennan v. Midwestern United Life Insurance Co.* (7th Cir. 1971), 450 F.2d 999, 1003, *cert. denied,* 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972); *State of Iowa v. Union Asphalt & Roadoils, Inc.* (S.D.Iowa 1968), 281 F.Supp. 391, 398, *aff'd* 8th Cir., 408 F.2d 1171. In short, any considerations of the need "to expedite cases, to fully utilize the court's time, to reduce overcrowded calendars and to establish finality of judgments * * * should never be used to thwart the objectives of the blind goddess" of justice itself. *Boughner v. Secretary of Health, Ed. & Welf., U.S.,* 572 F.2d at 978–79.

▆ In this case we may quickly dispose of the threshold question of a meritorious defense in favor of the defendant or of any consideration of prejudice to the plaintiff by reason of a grant of a vacation of the judgment. As we have seen, the defendant in this case has not simply a meritorious, it has an absolute, defense to any right of the plaintiff to penalty wages under Section 596. Nor can the plaintiff be said to be prejudiced by the vacation of his judgment for statutory penalty wages, to which he is not legally entitled. One cannot be prejudiced by the loss of that to which he was not entitled. Moreover, there was ample support for vacation of the judgment under several of the itemized grounds for relief set forth in 60(b), especially, had the district judge resolved any doubts in favor of the defendant's position, as he was obligated to do.

First of all, the defendant claims that its mistake in failing to retain counsel and to appear in defense of plaintiff's action was excusable and that the district court erred in not finding that it was entitled to vacation of the judgment under the first itemized ground for relief, *i. e.,* "mistake, inadvertence, surprise, or excusable neglect." Its excuse was that it had never employed the plaintiff and it never directly incurred any obligation to the plaintiff for wages; that the vessel was at all times of plaintiff's employment under charter to Bulk Food Carriers, which was actually plaintiff's employer and which was directly responsible to the plaintiff for any wages due him either under his articles or under the union contract. It emphasized that it had forwarded promptly all papers, as they were served upon it, to Bulk Food Carriers and that it felt it unnecessary for it to do more, since it had reason to assume Bulk Food Carriers would enter an appropriate defense. Moreover, the claim at most was for a period of five to six days when plaintiff was not working aboard the vessel under articles as a result of a special provision in the union contract between plaintiff's bargaining agent and the defendant. Such a claim could only have involved two or three hundred dollars, even under plaintiff's calculations, if recovery were restricted to the terms of the union contract. It was not unreasonable for the defendant under these circumstances to hesitate to incur the expense of engaging counsel to defend such a small suit when the real debtor in the situation, if any, was its charterer, which it assumed was defending the action.[13] But the district judge found the action of the defendant inexcusable and, were this the sole ground for vacation of judgment, we would be inclined to hold that the decision of the district judge in denying relief to the defendant was not an abuse of discretion warranting reversal. The mistake of the defendant, whether excusable or not, was not, however, the only mistake giving rise to the challenged default judgment in this case. There was a far more serious mistake and that was the mistake of law made by the trial judge himself in erroneously finding that the facts plead by the plaintiff in his complaint and testified to by him at the damages hearing established plaintiff's right to recover penalty wages under Section 596. As we have seen, it is beyond controversy that the district court had absolutely no authority to enter a judgment for statutory penalty wages under Section 596 against the defendant in this case. The

---

13. *See* 10 Wright and Miller, Federal Practice and Procedure, § 2663 at p. 99 (1973).

real issue in this case is whether a default judgment, entered as a result of a plain error of law apparent on the face of the pleadings themselves, is subject to vacation under 60(b).

■ Rule 60(b) does not confine the "mistake" for which vacation of judgment may be had to mistake by the moving party. It is true that, as originally drafted, the Rule was restricted to relief from "his mistake," meaning that of the moving party. But with the 1946 revision "his" was omitted from the Rule. The Advisory Committee's Note explains the omission was prompted by the feeling that the personal "pronoun 'his' has been eliminated on the basis that it is too restrictive, and that the subdivision should include the mistake or neglect of others which may be just as material and call just as much for supervisory jurisdiction as where the judgment is taken against the party through his mistake, inadvertence, etc." Contrary to the view of other commentators, Professor Moore suggests that, as a result of this change and certain other additions to the Rule, a mistake of law by the court itself apparent on the face of the record may support a vacation of the default under 60(b), especially if raised within the time allowed for appeal. 7 Moore's Federal Practice ¶ 60.22[3] at pp. 259–264. And this view has been adopted in some cases where the mistake was clear on the record, and involved a plain misconstruction of the statute on which the action was grounded (which is exactly the case under review here).[14] The clearest case to this effect is probably *Meadows v. Cohen* (5th Cir. 1969) 409 F.2d 750. The facts in that case were similar to those here:

"After entry of the judgment, which was clearly at variance with the plain wording of § 423(b), the Secretary sought modification. While this motion was not filed as promptly as it might have been, the error was brought to the Court's attention before any party had detrimentally relied on the judgment or sustained any loss by reason of it or through the intervention of third parties. Under these circumstances and the compelling policies of basic fairness and equity reflected by 60(b), the Court had a duty to conform its judgment to the law as enacted by Congress.

"Thus we cannot agree with the rather technical contention that the statutory limitation on retroactivity constituted an affirmative defense that was waived by failure to plead and prove it at trial. It is as much a part of the grant of legislative benefits as are the schedules of benefits payable." p. 753.

■ We need not determine whether, in the very unique circumstances of a statutory claim, the plain error of the court itself, apparent on the very face of the pleadings, in applying the statute may provide a basis for vacation of a default judgment entered on the basis of such erroneous application of the statute.[15] This mistake lead to a judgment unauthorized under both Section 596 and under the pleadings. Such a judgment would meet the criteria of the fourth itemized ground for relief set forth in the Rule, *i. e.*, "the judgment is void." The judgment entered in this case violated the mandate of Rule 54(c), Fed.R.Civ.P. The first sentence of that Rule states that a judgment by default is limited to the relief to which the plaintiff is entitled under his complaint.[16]

---

**14.** *Lairsey v. Advance Abrasives Co.* (5th Cir. 1976), 542 F.2d 928; *Tarkington v. United States Lines Co.* (2d Cir. 1955), 222 F.2d 358.

For the contrary view, *see Silk v. Sandoval* (1st Cir. 1971), 435 F.2d 1266, 1267, and cases cited therein. These cases assume that the proper remedy is by appeal, but where the defendant is in default, his only method of seeking relief is by a motion under 60(b) and, if unsuccessful, by appeal from the order on such motion.

**15.** Whether such mistake would qualify under the itemized ground of "mistake" in the Rule, it would appear that such a mistake was a circumstance to be considered in connection with the itemized "catch-all" ground, discussed later.

**16.** The specific language of the Rule, so far as here pertinent, is:

"A judgment by default shall not be different in kind or exceed in amount that prayed for in the demand for judgment."

There is a reference in the prayer of the complaint to "penalty wages as provided by the United States statutes," (without the specification of the applicable statute) but the allegations in the body of the complaint, in which the plaintiff sets forth the facts of his claim, demonstrate indisputably that the claim of the plaintiff did not qualify for the penalty award allowable under Section 596.

It is a well-settled rule of pleading, applicable in all courts, that, while it is not necessary to specify with particularity the statute, if that is the basis of one's claim, the party relying on such statute must allege every fact necessary to bring his action within the statute on which he rests his claim. *Manosky v. Bethlehem-Hingham Shipyard* (1st Cir. 1949), 177 F.2d 529, 532; *Welsh v. W. J. Dillner Transfer Co.* (W.D.Pa.1950), 91 F.Supp. 685, 688; *Seese v. Bethlehem Steel Co.* (D.Md.1947), 74 F.Supp. 412, 415, *aff'd* 4th Cir., 168 F.2d 58; *Comm., Dept. of Transportation v. Shipley Humble Oil Co.* (1977), 29 Pa. Cmwlth. 171, 370 A.2d 438, 440; *Frank J. Linhares Co., Inc. v. Reliance Ins.* (Mass. App.Ct.1976), 357 N.E.2d 313, 316; *City of Springfield v. Commonwealth* (1965), 349 Mass. 267, 270, 207 N.E.2d 891, 893; *Hall v. Kim* (1971), 53 Haw. 215, 491 P.2d 541, 544–45; *Monroe v. Darr* (1974), 214 Kan. 426, 520 P.2d 1197, 1201; *George Rose Sodding & Grading Co., Inc. v. City of Omaha* (1973), 190 Neb. 12, 205 N.W.2d 655, 656; *Erosion Control Corp. v. Evans* (1967), 58 Tenn.App. 90, 426 S.W.2d 202, 205; *Crowley v. Hughes* (1946), 74 Ga.App. 531, 40 S.E.2d 570, 571–72; *Zabady v. Frame* (Ct.App.Div. 1952), 22 N.J.Super. 68, 91 A.2d 643, 644; *Pilgrim Distributing Corp. v. Galsworthy, Inc.* (1947), 79 Ohio App. 529, 74 N.E.2d 579, 584, *aff'd.* 148 Ohio St. 567, 76 N.E.2d 382 (1947); *Sheffit v. Koff* (1953), 175 Pa.Super. 37, 100 A.2d 393, 395. Thus, under the settled rule of pleading, one who seeks penalty damages must allege in the body of his complaint every fact essential to bring his case within the language of the statute authorizing penalty wages, *i. e.*, § 596 in this case. A bare reference in the prayer of the complaint to "penalty wages," without either any specification of the applicable statute or any allegations of fact bringing his case within the statute will not suffice, since the prayer of the complaint may never

It may be argued that in this case the prayer did demand penalty wages, *though in an amount less than one-tenth that for which judgment was finally entered by the district court.* However, the language of the Rule follows the language in similar state statutes, and those statutes have given a two-fold construction to the language by treating the disjunctive phrase "different in kind or exceed in amount" as requiring that the relief available on default be such as is "within the fair scope of the allegations of the complaint" and, when money judgment is sought, the "specific amount demanded." 47 Am.Jur.2d § 1176, p. 199; *Pueblo Trading Co. v. El Camino Irr. District* (9th Cir. 1948), 169 F.2d 312, 313, *cert. denied,* 335 U.S. 911, 69 S.Ct. 482, 93 L.Ed. 444 (1949) ("went beyond the scope of the complaint, and to that extent the judgment, being by default, was a nullity"); *Hutchins v. Priddy* (W.D.Mo.1952), 103 F.Supp. 601, 605–06; *Tarnoff v. Jones* (1972), 17 Ariz.App. 240, 497 P.2d 60, 65; *Kohlenberger, Inc. v. Tyson's Foods, Inc.* (1974), 256 Ark. 584, 510 S.W.2d 555, 560–61 and 567; *Park Ave. Lumber & Supply Co. v. Nils A. Hofverberg, Inc.* (1966), 76 Ill.App.2d 334, 222 N.E.2d 49, 54 ("[o]ne has a right to assume that the relief granted on default will not exceed or substantially differ from that described in the complaint, and he may safely allow a default to be taken in reliance upon this assumption"); *Sullivan v. Miller* (1975), 26 Md.App. 189, 337 A.2d 185, 189; *Servco Equipment Co. v. C. M. Lingle Co.* (Mo.App.1972), 487 S.W.2d 869, 872; *Hopkins v. Hopkins* (1975), 266 S.C. 23, 27, 221 S.E.2d 113 ("[a] defendant who is in default for a failure to answer has the right to assume that the judgment will be limited to the cause of action stated in the complaint"); *Intermountain Food Equipment Co. v. Waller* (1963), 86 Idaho 94, 383 P.2d 612, 616 ("[i]n a default action a plaintiff is limited to allegations of his complaint although it contains prayer for general relief"); *Meir v. Walton* (1969) 6 N.C.App. 415, 170 S.E.2d 166, 168; 47 Am.Jur.2d § 1176, p. 199 ("[a]lthough the plaintiff's prayer for relief cannot extend the relief to which he is entitled, in a judgment by default, beyond the fair scope of the allegations of the complaint, the general rule is that relief granted in a judgment by default must be, not only within the fair scope of the allegations of the complaint, but also within the fair scope of the prayer thereof").

These statements accord with the rule followed in federal courts long prior to the adoption of the Rule in question. *Thomson v. Wooster* (1885), 114 U.S. 104, 110, 5 S.Ct. 788, 29 L.Ed. 105.

enlarge a plaintiff's right of recovery, which is controlled by the allegations in the body of his complaint. *Blazer v. Black* (10th Cir. 1952), 196 F.2d 139, 147; *Unanue v. Caribbean Canneries, Inc.* (D.Del.1971), 323 F.Supp. 63, 67; *Sarlie v. E. L. Bruce Co.* (S.D.N.Y.1967), 265 F.Supp. 371, 377; 6 Moore's Federal Practice ¶ 54.60, pp. 1212–13. And this is particularly so in a case such as this, where the plaintiff's own allegations of his claim demonstrated conclusively that his claim did not qualify under Section 596.[17] Under these circumstances the Rule would not permit of a judgment under an unspecified statute, when the plaintiff's express allegations, reinforced as they were by plaintiff's direct proof at the damages hearing established indisputably that he was not entitled to recover under the statute.[18] Any judgment entered under such circumstances is "null and void." Were this not so, there would well be serious due process questions. *See Mullane v. Central Hanover Tr. Co.* (1950), 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (the "right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest"). The "mistake" of the district court in grant-

ing default judgment for statutory penalty wages which on the face of the complaint and on plaintiff's proof at the damages hearing went beyond the ordinary "mistake;" it resulted in a judgment which under Rule 54(c) was "void." This represents a separate and distinct ground for vacation of a judgment under 60(b).[19] The ground is established in this case. When such a ground exists, vacation of judgment is required.[20]

But, beyond any claim for relief by the defendant for mistake (ground 1) and invalidity (ground 4), there is another ground for relief set forth in 60(b), which, assuming that none of the other grounds are applicable, would afford relief to the defendant under the unusual and extraordinary circumstances of this case and in view of the unconscionably unjust judgment entered. Subdivision (b)(6) authorizes relief for "any other reason justifying relief from the operation of the judgment." This has been described as the "catch-all" clause, *Menier v. United States* (5th Cir. 1968), 405 F.2d 245, 248 because it provides the court with "a grand reservoir of equitable power to do justice in a particular case," 7 Moore, § 60.27[2] at 375, *Radack v. Norwegian America Line Agency, Inc.* (2d Cir. 1963),

---

**17.** That a claim not resting on articles executed under § 574, 46 U.S.C. but solely under a union contract (which is the plaintiff's claim) is entirely different from a claim for wages earned under properly executed articles of employment qualifying for penalty wages under § 596, *see Arguelles v. U. S. Bulk Carriers, Inc.* (4th Cir. 1969), 408 F.2d 1065, 1071, *aff'd.* 400 U.S. 351, 91 S.Ct. 409, 27 L.Ed.2d 456 (1971). The union contract has an arbitration provision similar to that involved in *Kowalik v. General Marine Transport Corp.* (S.D.N.Y.1976), 411 F.Supp. 1325, *aff'd.* 2nd Cir., 550 F.2d 770 (1977). Neither party has raised the jurisdictional issue addressed in that case and for that reason we do not address it.

**18.** 10 Wright and Miller, Federal Practice and Procedure, § 2663 at p. 99:

"It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should he attempt to limit the scope and size of the potential judgment against him by not appearing or otherwise defaulting, allow the court

to give a different type of relief or a larger demand award."

**19.** A judgment is void under 60(b)(4) where there is a "lack of subject matter jurisdiction or jurisdiction over the parties. It may also arise if the court's action involves a plain usurpation of power or if the court has acted in a manner inconsistent with due process of law." *V. T. A., Inc. v. Arico, Inc.* (10th Cir. 1979), 597 F.2d 220, 224–25.

**20.** 10 Wright and Miller, § 2663 at 100; *Oaks v. Grocers Wholesale, Inc.* (Alaska 1963), 377 P.2d 1001, 1002 (under 60(b)); *Tarnoff v. Jones*, 497 P.2d at 65; *Wayne Creamery v. Suyak* (1968), 10 Mich.App. 41, 158 N.W.2d 825, 829–830; *Columbia Valley Credit Exchange, Inc. v. Lampson* (1975), 12 Wash.App. 952, 533 P.2d 152, 154; *Servco Equipment Co. v. C. M. Lingle Co.*, 487 S.W.2d at 872; *Southern Arizona School for Boys, Inc. v. Chery* (1978), 119 Ariz. 277, 580 P.2d 738, 744; *Blakely v. Wright* (1977), 269 S.C. 6, 12, 235 S.E.2d 803; *Leadtec California, Inc. v. Highlands Ins. Co.* (1977), 74 Cal.App.3d 842, 141 Cal.Rptr. 706.

318 F.2d 538, 542, and "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice," *Klapprott v. United States, 335 U.S. at 615, 69 S.Ct. at 390, where relief might not be available under any other clause in 60(b),* Transit Casualty Company v. Security Trust Company *(5th Cir. 1971), 441 F.2d 788, 792,* cert. denied, *404 U.S. 883, 92 S.Ct. 211, 30 L.Ed.2d 164. This is just such an extraordinary case where this "catch-all" ground was intended to afford relief.*

We are mindful that ordinarily the denial by the district court of a motion to vacate a judgment under 60(b) on any ground other than that the judgment is void as a matter of law may only be reversed for abuse of discretion. *Roberts v. Rehoboth Pharmacy, Inc.* (5th Cir. 1978), 574 F.2d 846, 847; *Pagan v. American Airlines, Inc.* (1st Cir. 1976), 534 F.2d 990, 993; *Chief Freight Lines Co. v. Local Union No. 886* (10th Cir. 1975), 514 F.2d 572, 577; *Ruiz v. Hamburg-American Line* (9th Cir. 1973), 478 F.2d 29, 31; *Hale v. Ralston Purina Company* (8th Cir. 1970), 432 F.2d 156, 159–60. We think, though, that, considering all the circumstances, there has been ample showing of abuse of discretion in this case not merely to warrant but actually to demand the vacation of the statutory wage penalty judgment. It would be unconscionable not to set aside such judgment, when unquestionably there was no basis whatsoever either in fact or in law for such a judgment [21] and when the judgment is practically two hundred times that which could have been entered on plaintiff's claim under the union contract. Unfortunately, the district judge completely misconstrued the statute in question. In correcting his mistake and in relieving the defendant of an *invalid judgment in an unconscionable amount,* we are doing what we are convinced the district judge in this case would have done himself, had he not misconstrued the statute. But, whether this be true or not, fundamental fairness and considerations of justice, apart from any question of the voidness of the judgment as a matter of law, command that the judgment for statutory penalty wages be vacated.

It does not follow, though, that the entire judgment must be vacated. The defendant has not suggested that it has a meritorious defense to the claim of the plaintiff under the union contract. The evidence does raise some question whether the number of days for which the plaintiff would be entitled to wages and allowances under the union contract was five or six days. The resolution of this conflict depends on whether the plaintiff was paid for April 20, 1976, when his wages were settled for his coastwise voyage for which he was engaged on that date. We think, however, that the defendant's conduct does not justify re-inquiry into that issue and that it should be assumed that the defendant was liable for six days under the union contract, or $312.54. The judgment in this case should accordingly be modified to eliminate any award of statutory penalty wages, but granting judgment for $312.54 and costs. Plaintiff's attorney should also be allowed attorney's fees for the additional services made necessary as a consequence of the defendant's conduct in this matter.

The cause is accordingly remanded to the district court with instructions to void the judgment granted the plaintiff against the defendant, except for the sum of Three Hundred, Twelve and 54/100 ($312.54) Dollars. The district court on remand should also make such allowance to plaintiff's attorney for his services rendered necessary by reason of defendant's neglect.

*REMANDED WITH INSTRUCTIONS.*

---

**21.** We have treated the appeal as one involving an abuse of discretion. There is a serious question whether the judgment was not "null and void" for the reasons set forth *supra.* So far as this latter ground was concerned, the power of this Court to reverse is similar to that in any other instance of error of law. 11 Wright and Miller, *Federal Practice and Procedure,* § 2872.