881 F.2d 1069
 13 Fed.R.Serv.3d 1382
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Iverson T. EDDINS, Plaintiff-Appellee,
v.
Helen MEDLAR, Defendant-Appellant.
Iverson T. EDDINS, Plaintiff-Appellee,
v.
Helen MEDLAR, Defendant-Appellant.
 Nos. 87-2602, 89-2910.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 5, 1988.
Decided July 21, 1989.
Rehearing Denied Aug. 15, 1989.
 
 Ronald Stephen Evans, Larry A. Pochucha (Bremner, Baber & Janus on brief) for appellant.
 Calvin Waverly Parker for appellee.
 Before MURNAGHAN and SPROUSE, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 In this diversity action, Iverson Eddins sued his aunt, Helen Medlar, for slander after she made false statements that Eddins had sexually assaulted his incompetent sister, Theresa Eddins. After Medlar had discharged two attorneys and consistently refused to honor discovery orders, the district court granted Iverson Eddins' third motion for default on the issue of liability. The default judgment rendered Medlar liable for slandering Eddins "falsely, maliciously, and with reckless disregard for the truth," as alleged in the complaint.
 
 
 2
 Medlar was notified of the jury trial to be held on the question of damages, but also failed to appear for the damages trial. The complaint had demanded $25,000 compensatory damages and $500,000 punitive damages. The jury awarded Eddins $50,000 compensatory damages and $100,000 punitive damages.
 
 
 3
 Medlar contends on appeal that she was not given notice of various proceedings, that the default judgment was improperly entered, that the court erroneously charged the jury, that the verdict was excessive, and that the verdict impermissibly exceeded the amount demanded in the complaint. We affirm all of the court's actions except the entry of judgment for $50,000 compensatory damages, which we find to be in violation of Fed.R.Civ.P. 54(c)'s limit on damages for default judgments. The compensatory damage component of the award should be $25,000.
 
 
 4
 Eddins alleged in his complaint that Medlar twice slandered her nephew:
 
 
 5
 On or about 11 September 1985 the defendant Helen Medlar falsely and maliciously and with reckless disregard for the truth told Dorothy Eddins, plaintiff's mother, that one Margaret Deane had told defendant that plaintiff had in the past sexually assaulted his sister, Theresa Eddins, an incompetent.
 
 
 6
 On 12 September 1985 Helen Medlar falsely and maliciously and with reckless disregard for the truth told David C. Dickey: (1) that one Margaret Deane had told defendant that in the past Theresa Eddins, plaintiff's incompetent sister, had been sexually assaulted, (2) that Margaret Deane had then said she believed plaintiff had in the past perpetrated such an assault, and (3) that she the defendant also believed that such allegation was probably so.
 
 
 7
 Margaret Deane, who had cared for Theresa Eddins for fifteen years, testified at trial that she had never discussed with Medlar or anyone else any sexual assaults on Theresa Eddins by anyone. Dorothy Eddins, David Dickey, and two business associates of Iverson Eddins all testified at the damages trial that Medlar had communicated the slander to them during her visit in September 1985.
 
 
 8
 Iverson Eddins filed his complaint for slander in the district court on September 20, 1985, and simultaneously had Medlar served in person with a summons, complaint, deposition notice, and deposition subpoena. Although Medlar did not answer until November 4, 1985, the district court invalidated the clerk's entry of default and denied Eddins' motion for a default judgment in December 1985. That same month, Medlar discharged her first lawyer and a second attorney, John Camblos, entered an appearance for her.
 
 
 9
 Eddins' counsel took Medlar's deposition in Virginia on July 22, 1986. On July 30, 1986, Eddins served Medlar with interrogatories and a request for production which sought financial information from her to assist Eddins in pressing his claim for punitive damages. Receiving no response, Eddins filed a second motion for default judgment on September 3, 1986, which the district court also denied. In late September, Medlar signed her deposition but persisted in failing to respond to the interrogatories and requests for production.
 
 
 10
 Eddins filed his third motion for default judgment on February 13, 1987, and, after notice, a hearing was held on February 23, 1987. Attorney Camblos appeared and stated that Medlar had ignored his entreaties that she respond to discovery. He also informed the district court that Medlar had fired him and that another lawyer had obtained Medlar's files from him at Medlar's request. On April 3, 1987, the district court granted Camblos' motion to withdraw, granted default judgment against Medlar on liability, and set a jury trial date of May 11 to resolve the damage issue. Eddins moved for an extension of discovery, and this motion, along with papers indicating the impending trial date, was served on Medlar on April 7, 1987. Approximately two weeks before the trial on damages, Medlar phoned the district court and relayed her intention to appear at the trial on damages.
 
 
 11
 Medlar wrote counsel for Eddins on April 22, 1987, indicating her continuing resistance to discovery and her receipt of filings pertaining to the suit against her:
 
 Dear Sir:
 
 12
 One does not go around giving financial reports to just anyone for just any reason. Thus I respectfully decline to do such in this case.
 
 
 13
 I am one who believes that in the United States of America one is innocent until proven guilty.
 
 
 14
 However, I will give you a copy of my covered earnings through the years of my life that I was or could have been employed.
 
 
 15
 I am sending under separate cover a copy of this letter and the material that I have recently received from you and the Clerk of the Western District Court to my Attorney in Virginia.
 
 
 16
 Neither Medlar nor an attorney representing her appeared at the May 11 trial on damages in Charlottesville, Virginia. Shortly after the trial began, a lawyer from Richmond telephoned the district court, stated that he had just been retained by Medlar, and inquired about the nature of the proceedings in Charlottesville. Medlar's former attorney, Camblos, appeared in court that afternoon and stated that Medlar had called him to complain about her attorney in Richmond. The district court reviewed Medlar's conduct during the course of the litigation and allowed the trial to proceed. At the end of the day, the jury returned a verdict in favor of Eddins for $50,000 compensatory damages and $100,000 punitive damages. Medlar made no motions under rule 59 for a new trial or alteration of judgment. Instead, she noted a timely appeal, and in her brief she argued, among other things, that rule 54(c) limits the compensatory judgment of the amount sought in Eddins' complaint.
 
 
 17
 Some eleven months after judgment Medlar filed a rule 60(b) motion to set aside the judgment for a variety of reasons. The district court, after a hearing, denied the motion, and Medlar also appeals that denial. We consolidated the appeal of the judgment and the appeal of the rule 60(b) ruling.
 
 
 18
 Medlar's complete default regarding both the liability and damages phases of this litigation precludes normal appellate review of her appeal of the district court's judgment entered on a finding of default. See Commodity Futures Trading Commission v. American Commodity Group Corp., 753 F.2d 862, 865-66 (11th Cir.1984). With the exception of the size of the compensatory damages discussed below, our review reveals no "plain error of such a fundamental nature that we should notice it." Sibbach v. Wilson & Co., 312 U.S. 1, 16 (1941). Further, although Medlar, in her rule 60(b) motion, advanced a host of contentions, we think the district court correctly denied her this post-trial relief for failing to demonstrate that the judgment resulted from "mistake, inadvertence, surprise, or excusable neglect." As the district court pointed out, the evidence introduced at the post-trial hearing simply reinforced the trial record that there was no mistake, inadvertence or surprise and that the only neglect was her willful neglect.
 
 
 19
 Medlar had more than adequate notice of the motion for default judgment and of the jury trial on the question of damages. The record reflects Medlar's continued contumaciousness from the filing of the complaint through discovery, court proceedings, and trial on the question of damages. She displayed disregard and even disrespect for the judicial proceedings, justifying the district court's grant of a default judgment. The reason she advanced at her rule 60(b) hearing for her contumacy was, in the least, unpersuasive and even contradictory.
 
 
 20
 We are persuaded, however, that the district court committed plain error in approving a compensatory damage verdict twice the size of that pleaded. Rule 54(c) provides the prevailing party in contested action the relief to which the party is entitled, notwithstanding a lack of any demand for such relief in the party's pleading. However, it expressly protects a defaulting party from a judgment in excess of that demanded in the complaint. It limits the relief available under a default judgment to relief which shall "not be different in kind from or exceed in amount that prayed for in the demand for judgment." Fed.R.Civ.P. 54(c).
 
 
 21
 By excepting default judgments from the generous treatment given verdicts in general, the drafters obviously designed the rule to protect a contumacious party against his very contumacy. A judgment for compensatory damages is different in kind from a judgment for punitive damages, since, at a minimum, they involve different standards of liability and require unrelated types of evidence for proof. Consequently, in our view the plain language of rule 54(c) requires that, when a default judgment encompasses both compensatory and punitive damages, each category of damages must be limited to the amount demanded in the complaint. See generally Compton v. Alton Steamship Co., 608 F.2d 96, 104-05 n. 16 (4th Cir.1979) (predecessor statutes from which text of rule 54(c) is drawn "have given a two-fold construction to the language by treating the disjunctive phrase 'different in kind or exceed in amount' as requiring that the relief available on default be such as is 'within the fair scope of the allegations of the complaint' and, when money judgment is sought, the 'specific amount demand' ").
 
 
 22
 In view of the above, the judgment of the district court is affirmed in part, reversed in part, and remanded for entry of judgment in favor of Eddins in the amount of $125,000.
 
 
 23
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.