Kevin POTTER; Marguerite Potter; Harry Potter; Theodore Potter; and Dale Potter, Plaintiffs,

v.

James D. MOSTELLER, III; James Nance; Stanley McGuffin; Henderson & Salley; Bedingfield & Williams; Nance & McCants; Sinkler & Boyd; Augusta Fiberglass, Inc.; Crestwood Partnership; John Boyd; Dale Bryant; Walter Bryant; George Spruce McCain; McCain Financial Group, Inc.; Ryan Tidwell; Crestwood Golf Club Trust; South Carolina National Bank; and Wachovia Bank of South Carolina, Defendants.

No. CA–98–1158–22.

United States District Court, D. South Carolina, Orangeburg Division.

March 21, 2000.

Kevin Potter, Millville, NJ, for Kevin Potter, Marguerite C. Potter, Harry H. Potter, Theodore C Potter, Dale M Potter, plaintiffs.

James D Mosteller, III, Bedingfield and Williams, Barnwell, Clarke W. DuBose, Sinkler and Boyd, Columbia, James D. Nance, Nance and McCants, Aiken, William Walter Bedingfield, Bedingfield and Williams, Barnwell, Edward A Frazier, Edward A Frazier PA, Lexington, for James D Mosteller, III, James Nance, Stanley McGuffin, Henderson and Salley, Bedingfield & Williams, Nance & McCants, Augusta Fiberglass Coatings, Inc., Crestwood Golf Club Inc., Crestwood Partnership, John Boyd, Dale Bryant, Walter Bryant, George Spruce McCain, Claude McCain, McCain Financial Group, Inc., Ryan Tidwell, Crestwood Golf Club Inc., the South Carolina National Bank, Wachovia Bank & Trust Company NA, Sinkler & Boyd, Edward Hayes, defendants.

## ORDER

CURRIE, District Judge.

This matter is before the court on the *pro se* Plaintiffs' "Motion for Rule 60 Relief," filed May 6, 1999, and the Petition for Attorney Fees, filed April 13, 1999, by Defendants Stanley McGuffin, Sinkler & Boyd, P.A. law firm, and Wachovia Bank, N.A. (hereinafter "the McGuffin Defendants"). Plaintiffs also filed a separate document with their objections to the attorneys' fee petition on May 6, 1999.

Previously by opinion filed March 24, 1999, the court addressed the substantive merits of Plaintiffs' claims and granted several defense motions for summary judgment. The March 24, 1999, order also granted the McGuffin Defendants' Motion for Sanctions and directed Defendants to file a petition for attorney fees, and Plaintiff to respond to it. The March 24, 1999, order expressly directed the Clerk to withhold entry of final judgment until the court entered a final decision on Defendants' request for sanctions.

Notwithstanding the absence of a final resolution on the sanctions question or the lack of entry of any judgment, Plaintiffs, on April 21, 1999, noticed their immediate appeal of this court's March 24, 1999, order. By order of June 21, 1999, the Fourth Circuit Court of Appeals granted Defendants/Appellees' Motion to Dismiss Plaintiffs' appeal as prema-

turely filed. The Record on Appeal was returned from the Fourth Circuit on July 15, 1999. Accordingly, the outstanding Rule 60, FRCP, motion and Defendants' attorneys' fee petition are now ripe for resolution in this court.

## I. PROCEDURAL HISTORY

The March 24, 1999, order, as well as the numerous reported and unreported *Potter* opinions referenced therein and in the Magistrate Judge's underlying Order and Recommendation, fully recited the protracted litigation advanced by Plaintiffs in South Carolina state and federal trial and appellate courts over their 1991 purchase of a golf course. Indisputably, Plaintiffs have been "frequent filers" of litigation concerning Crestwood Golf Course in South Carolina courts. The chronology of Plaintiffs' litigation is repeated here only where relevant to the sanctions award and prefiling injunction questions.

The present litigation is the sixth such case instituted by Plaintiffs in this district court concerning the Crestwood Golf Club. Pursuant to a Local Rule referring all matters with pro se parties to a United States Magistrate Judge for pretrial screening, the instant case, *Potter et al. v. Mosteller, III. et al.*, C.A. No. 5:98–1158–22, dubbed *"Potter IV,"* was referred to United States Magistrate Judge Joseph R. McCrorey, Jr., for pretrial handling. Magistrate Judge McCrorey has long experience in *Potter* litigation, having handled numerous pretrial matters in *Potter II* and *Potter III.* Magistrate Judge McCrorey issued an Order and Recommendation on January 27, 1999, denying Plaintiffs' motion to amend and recommending that Defendants' motions for summary judgment be granted but that the motion for sanctions be denied.

Matters came to this court for review on objections by several parties. With regard to the substantive merits of *Potter IV,* the March 24, 1999, opinion agreed with Magistrate Judge McCrorey that all defense summary judgment motions should be granted, and that Plaintiffs' motion to amend should

be denied as futile. Therefore, the Order and Recommendation was adopted and incorporated to that extent.

In granting summary judgment to Defendants on all claims related to dismissal of Dale Potter's counterclaims (generically referred to as "the misrepresentation-type claims"), the court reasoned that Dale Potter's lack of due diligence in failing to appear at the April 24, 1995, state court hearing and failing to appeal on her own behalf the state court foreclosure action to the state Supreme Court precluded the Potters from proving the extrinsic fraud necessary to launch a collateral attack on the state court judgment. Thus, under the undisputed facts, Plaintiffs could not prevail on an extrinsic fraud claim under any misrepresentation-type theory. As to Plaintiffs' second category of *Potter IV* claims based on alleged receiver mismanagement, the court held,[1] consistent with its prior ruling, that such claims could not be litigated in federal court. These were the bases for the court's rulings that Defendants were entitled to summary judgment on both categories of claims.

Nevertheless, the court found that the Recommendation had erred in one respect. The Magistrate Judge had overlooked record evidence of Defendants' timely service upon Plaintiffs of their notice of intent to move for sanctions under Rule 11, FRCP. Rule 11(c)(1)(A) requires that service of this notice be effected 21 days before filing the motion for sanctions in court. Defendants' objections pointed out record evidence of their compliance. Based on this evidence and Plaintiffs' failure to refute it, the court found Defendants had complied with the "safe harbor" provisions of Rule 11, FRCP, and therefore, that the court would further consider the McGuffin Defendants' motion for sanctions.

In analyzing the alleged "frivolity" or baseless nature of this litigation, the court once again had to distinguish between Plaintiffs' diverse claims: (1) those involving alleged misrepresentations before Judge Ervin in

---

1. For the second time in this litigation, the court found it had no jurisdiction over Plaintiffs' "receiver mismanagement" claims. See discussion below concerning Plaintiffs' earlier claims against receiver Kelly Cannon.

state court; and (2) those involving alleged improprieties by receivers and Defendants as far as pilfering golf course assets. This court found both categories of claims to be groundless and wholly without legal basis or foundation in this district court.

Plaintiffs' misrepresentation-type claims alleged that Defendants misled the state court concerning Dale Potter's status in the federal litigation, culminating in an erroneous dismissal of Dale Potter's counterclaims in state court Case No. 92–CP–05–76, and judgment being entered against Harry and Marguerite Potter in state court Case No. 92–CP–05–75.[2] This court's March 24 opinion found on pages 7 to 14 that Plaintiffs' misrepresentation-type claims were barred *FOR THE THIRD TIME* by principles of res judicata. Indisputably, Plaintiffs' multiple misrepresentation-type claims have been repeatedly re-presented without success, always being subject to dismissal on dispositive pretrial motion in state and federal litigation.

As to the alleged frivolity of Plaintiffs' second category of claims based on receiver mismanagement, the court recognized receivers Tidwell and Hayes were "new faces" in the cast of characters (as Defendants) occupying the stage in *Potter* litigation. Plaintiffs' present complaint charges that receivers Ryan Tidwell and Edward Hayes allegedly joined with Defendants in depleting golf course estate assets. However, in prior litigation against Kelly Cannon, an earlier receiver for the Crestwood Golf Course, *Potter v. Crestwood, et al.,* 5:94–2047–22 (*Potter II*), Plaintiffs had advanced similar claims against receiver Cannon, which were dismissed on dispositive motion. This court ruled in *Potter II* that Plaintiffs could not press a collateral action against a receiver in this federal forum. The Fourth Circuit Court of Appeals affirmed the judgment in *Potter II* "based on the reasoning of the district court," *Potter v. Crestwood Golf Club, Inc., et al.,* 149 F.3d 1170, 1998 WL 276454 at *1 (4th Cir.1998). Thus, after May 27, 1998, when *Potter II* was affirmed by the Fourth Circuit, Plaintiffs had actual

notice that these type of "receiver mismanagement claims" were jurisdictionally deficient and "unwarranted by existing law," Rule 11(b)(2), FRCP, in district court. Nevertheless, Plaintiffs continued to press their claims against state court receivers Tidwell and Hayes in this federal court, even after being served with Defendants' notice of intent to move for Rule 11 sanctions.

Based on the preceding history, the court was compelled to conclude that all of Plaintiffs' claims were frivolous and subject to claims preclusion or jurisdictional bars. Accordingly, the March 24, 1999, order included a Rule to Show Cause directing Plaintiffs to show cause why a prefiling injunction should not be imposed. With regard to monetary sanctions, the order also directed Defendants to file a petition for fees and costs, to which Plaintiffs could timely object.

## II. PLAINTIFFS' MOTION FOR RULE 60, FRCP, RELIEF

Plaintiffs premise their present Rule 60, FRCP, motion on three grounds. Rule 60 addresses relief from final judgments and orders. Plaintiffs do not specify under which subsection of Rule 60 they seek relief. However, because Plaintiffs have not complained of "clerical mistakes," the subject of subsection (a) of Rule 60, the court assumes that Plaintiffs' motion is founded in subsection (b), which is entitled "mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud, etc..." More specifically, Plaintiffs' three objections appear to invoke subsection "(b)(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;" and subsection "(b)(6) any other reason justifying relief from the operation of the judgment."

Plaintiffs' first basis for Rule 60 relief argues that the court erroneously dismissed their misrepresentation-type claims on the grounds of issue preclusion because Defendants' alleged "extrinsic fraud" in mis-

---

**2.** For the record, the court again notes that both of these state court actions were appealed vigorously and unsuccessfully by the pro se Plaintiffs. The Supreme Court of South Carolina affirmed both the judgments in *Crestwood Golf Club, Inc. v. Harry H. Potter,* 328 S.C. 201, 493 S.E.2d 826 (1997), rehearing denied (1997).

stating Dale Potter's status to the state court is an exception under Rule 60(b)(3), FRCP. Rule 60(b)(3) allows a court to relieve a party from a final order for "fraud ..., misrepresentation, or other misconduct of an adverse party." It is well settled that the clear and convincing standard of proof applies in Rule 60(b)(3) cases alleging fraud upon the court. *United States v. MacDonald,* 161 F.3d 4, 1998 WL 637184 (4th Cir.1998) (unpublished). The Fourth Circuit recognizes that the "fraud upon the court" exception must be narrowly construed so that this "otherwise nebulous concept" does not "overwhelm the specific provision of 60(b)(3) and its time limitation and thereby subvert the balance of equities contained in the Rule." *Great Coastal Express, Inc. v. International Bhd. of Teamsters,* 675 F.2d 1349, 1356 (4th Cir. 1982). Examples of subsection (b)(3) fraud include fraud by bribing a judge, or tampering with a jury or court officer, including an attorney. *In re Genesys Data Tech., Inc.,* 204 F.3d 124 (4th Cir.2000).

■ Plaintiffs' first argument for Rule 60(b)(3) relief is without relevance or application to *Potter IV* for the simple fact that there has been no fraud practiced upon *this court* concerning Dale Potter's status in the federal litigation.[3] This court has never been mistaken at any point concerning Dale Potter's status as a party in prior *Potter* federal litigation presided over by this very court; therefore, it is impossible for any fraud to have been perpetrated on this court within the meaning of Rule 60(b)(3), FRCP.

■ Plaintiffs' next two arguments appear to be premised under Rule 60(b)(6), FRCP, the "catchall" clause of Rule 60(b), which allows relief for "any other reason justifying relief from the operation of the judgment." This provision provides the court with "a grand reservoir of equitable power to do justice in a particular case" and "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice" where relief is not available under any other clause. *Eberhardt*

*v. Integrated Design & Construction, Inc.,* 167 F.3d 861, 871 (4th Cir.1999) quoting *Compton v. Alton S.S. Co.,* 608 F.2d 96, 106–07 (4th Cir.1979). In *Compton* the Fourth Circuit found four things necessary for Rule 60(b)(6), FRCP, relief: (1) the motion must be timely, as having been made within a reasonable time; (2) the motion must be premised on a meritorious defense; (3) there must be an absence of prejudice to the opposing party; and (4) the motion must be accompanied by exceptional circumstances. 608 F.2d at 102.

Plaintiffs argue that the March 24, 1999, order erred in finding defense counsel in privity with their clients for *res judicata* purposes and contend that their complaint was "replete with allegations" that defense counsel acted outside the scope of employment. Plaintiffs charge that this court improperly decided contested factual matters against them. The problem with Plaintiffs' argument is that Plaintiffs' lengthy complaints are always replete with all sorts of allegations but that when put to the test of proof, Plaintiffs come up empty-handed. In opposition to the defense motion for summary judgment, Plaintiffs offered not a scintilla of evidence, other than their speculation and harassing accusations, that the attorney defendants were operating in a personal capacity. Because Plaintiffs submitted nothing to overcome the record evidence that defense counsel acted solely in professional capacities, the court applied the mandate of Rule 56(e), FRCP, and resolved that factual matter adversely to Plaintiffs as one in which there was no genuine issue of material fact.

Applying the four *Compton* factors to Plaintiffs' objection, it is obvious that, even assuming that Plaintiffs' motion is deemed timely, Plaintiffs' Rule 60 motion does not present a "meritorious defense" within the meaning of Rule 60(b)(6), FRCP. Thus, Plaintiffs cannot prevail under this ground for relief.

Plaintiffs' last argument for Rule 60(b) relief contends that the March 24, 1999, finding

---

**3.** Whether the alleged misrepresentations by Defendants to a state court judge entitled Plaintiffs to relief under Rule 60(b)(3), SCRCP, is, of course, a wholly separate question, exclusively

entrusted to the Supreme Court of South Carolina in *Crestwood Golf Club, Inc. v. Potter,* 328 S.C. 201, 493 S.E.2d 826 (1997).

that Plaintiffs' misrepresentation-type claims were "frivolous" (as having been repeatedly advanced without success) must be set aside as plain error as counsel should not be permitted to perpetrate a fraud on the court. Again, for reasons stated above, no one alleges a fraud has been practiced against *this court.* Whatever may have transpired in state court, those matters have not affected the integrity of any federal judgments. Thus, Plaintiff's argument under Rule 60 has no meritorious basis, as required by *Compton.*

Having considered Plaintiffs' three arguments for relief, the court DENIES Plaintiffs' Motion for Rule 60 Relief, filed May 6, 1999.

## III. PLAINTIFFS' OBJECTIONS TO DEFENDANTS' MOTION FOR RULE 11 SANCTIONS

Pursuant to the March 24, 1999, order Defendants submitted their attorneys' fees and costs petition in the total amount of $21,825.97. That sum includes $20,953.15 of attorneys' fees spread among three attorney timekeepers and two paralegals, and $872.82 of costs, primarily Westlaw research and photocopying.

Accompanying the petition is the affidavit of Clarke Dubose, Esq., principal counsel for the McGuffin Defendants in *Potter IV.* The court finds that Mr. Dubose's affidavit adequately addresses the twelve relevant factors used in making a determination of "reasonable" hours and rates, as noted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4th Cir.1978). The court also finds that the 15 pages of attached timesheet entries provide sufficiently detailed explanations of discrete tasks in order to facilitate scrutiny.

In their May 6, 1999, "Objections to Rule 11 Sanctions," Plaintiffs belatedly attempt to resurrect the issue of Defendants' compliance with the safe harbor provision of Rule 11, FRCP, by attaching un-notarized, unverified

"certifications" of Kevin Potter, Harry Potter, Marguerite Potter, Dale Potter, and Theodore Potter, all of which assert that these individuals "had no knowledge that the McGuffin defendants were moving before this court for sanctions" prior to receipt of the Order and Recommendation dated January 27, 1999. Thus, Plaintiffs appear to assert, albeit somewhat indirectly, that Defendants never served notice of the intent to move for sanctions on them.

It is simply too late for Plaintiffs to raise this issue, as they had ample opportunity to respond to Defendants' February 8, 1999, Objections in which Defendants pointed out the record evidence showing their compliance with Rule 11 notice requirements. The court suspended ruling on Defendants' objections for a few weeks before issuing its March 24, 1999, order just in case Plaintiffs chose to submit an untimely response, which the court was prepared to consider. However, Plaintiffs tendered no Reply to Defendants' objections contesting their receipt of the notice of intent to move for sanctions. Thus, Plaintiffs have waived this argument by their dilatoriness.

Even if Plaintiffs had timely raised this issue, they could not prevail as their argument is based wholly on their own self-serving, unsworn declarations and is contradicted by the record evidence of the certificate of service. Moreover, Plaintiffs' "certifications" do not expressly aver anything more than that they were unaware of Defendants' request for sanctions. For all the court knows, Plaintiffs' professed ignorance could have resulted from Plaintiffs' conscious choice to ignore and leave unopened mail properly addressed and delivered to their last known address. Thus, to the extent that Plaintiffs' "certifications" attempt to cast eleventh hour doubts about Defendants' compliance with Rule 11 safe harbor notice requirements, they are deemed not worthy of belief and are, in fact, not believed by the court.[4]

---

4. Plaintiffs' unsworn certifications offer no satisfactory explanation why they did not receive the Rule 11 motion *either* on the occasion of original service on them, or on the occasion when the motion was filed with the court and re-served on them. Neither do Plaintiffs offer any explanation why they failed to raise in their own February 10, 1999, Objections lack of service as an issue when the Order and Recommendation expressly addressed the motion for sanctions.

The court has carefully considered Plaintiffs' "laundry list" of objections to the imposition of monetary sanctions and finds most of it to be without merit and only minimally worthy of acknowledgment. In summary, Plaintiffs assert:

1. Because Defendants failed to "mitigate damages" in the sense of minimizing attorneys' fees and costs by conducting a cost-effective litigation defense, Plaintiffs should not have to finance defense counsel's inefficiency by paying sanctions;

2. There is no evidence Defendants intend to compensate defense counsel for their work and, therefore, defense counsel's bills are "a hoax";

3. A mutual release approved by the Bankruptcy Court for the District of Maryland, by order of August 11, 1998, in an unnamed action bearing the designation "C.A. No. 96–6–0058–JS," bars the request for sanctions;

4. Plaintiffs' alleged poor financial status precludes an imposition of sanctions;

5. Plaintiffs are inexperienced pro se litigants, a factor to take into account in weighing frivolity and sanctions;

6. Defense counsels' bills are unreasonable, vague and the attorneys' requested hourly rates are too high.

Of the preceding six objections, the court credits only part of Plaintiffs' argument (6), the objection that certain timekeeper's rates were figured at too high a level for this legal community and this type of litigation. In the calculation of fees below, the court appropriately reduces the requested rates for certain timekeepers. As to Plaintiffs' remaining objections, the court dismisses each of them on the following grounds:

1. The court finds no basis for Plaintiffs' bald assertion that defense counsel have inefficiently utilized their time. The court has found that *Potter* litigation, as does most pro se litigation, presents special challenges in terms of recognizing, classifying and addressing the various, often inarticulately framed legal questions presented by the plaintiffs. Defense counsel did not waste time or resources.

2. Mr. Dubose's affidavit establishes that his law firm's representation of the McGuffin Defendants was undertaken at the request of Defendant Wachovia Bank and the firm's liability carrier. Those two entities have paid counsels' fees and any sanctions imposed by the court will be reimbursed to those entities. Thus, Plaintiffs' bald assertion that counsels' fee arrangement is not an arms length arrangement is nothing more than idle speculation.

3. The McGuffin Defendants are not parties to the mutual release approved by the Maryland Bankruptcy Court and alleged by Plaintiffs to be a bar to recovery of any sanctions. The release is attached as Exhibit 12 to the McGuffin Affidavit, filed September 17, 1998.

4. Although Plaintiffs collectively attempt to plead that they are without financial means to pay sanctions, they attach financial information, in the form of an unsigned, undated 1998 I.R.S. Form 1040, concerning only two Potters, Theodore and Dale Potter. It shows those Potters as having Adjusted Gross Income of $27,096 for 1998. Plaintiffs did not submit any financial information relating to the other Potters in an attempt to establish inability to meet a sanctions award. This glaring omission raises doubts concerning the veracity of Plaintiffs' professed poverty.

Even assuming *arguendo* that the Potters did not enjoy a high steady income, evidence shows that there are ample assets to satisfy any sanctions. In *Wachovia Bank, N.A. v. Potter,* Case No. 99–CP–05–56, Judge Gary E. Clary, Circuit Judge, County of Bamberg, issued a Warrant of Attachment on May 6, 1999, in the amount of $21,825.97 out of a total fund of $37,000 owed to Kevin and Theodore Potter. Thus, Plaintiffs can more than satisfy any award of sanctions in this case and still have funds left over from the balance of proceeds remaining in the state court action.

5. Plaintiffs' attempts to invoke their pro se status as a shield against imposition of sanctions is futile. The years of vexatious litigation advanced by them in numerous state and federal trial and appellate courts,

in South Carolina and other states [5], refutes any contention that Plaintiffs are naive and unsophisticated pro se litigants.

6. As is more adequately addressed below with regard to the lodestar calculation, the court imposes sanctions based only on reasonable hourly rates and reasonable hour totals.

■ The court finds the following specific egregious factors support the imposition of monetary sanctions against Plaintiffs and in favor of these Defendants:

1. The McGuffin Defendants had no role as parties, counsel, or otherwise, in Case No. 92–CP–05–75, the situs from which all of Plaintiffs' alleged misrepresentation-type claims spring, and did not participate in the state court hearing before Judge Ervin;

2. Defense counsel McGuffin's role in Case No. 92–CP–05–76 was a professional one limited to protecting Wachovia Bank's first mortgage;

3. Plaintiffs have brought two prior actions against Wachovia Bank or its predecessor, South Carolina National Bank, and Plaintiffs either failed to raise the claims at that time (which would have been known to them), or the claims were dismissed by the court;

4. The court warned Plaintiffs three years ago that their litigation tactics "would long ago have resulted in serious sanctions against members of the bar" and that the court was being "extremely patient" with them only because of their pro se status. *Potter v. Crestwood Golf Club,*

*Inc., et al.,* C.A. No. 5:94–2047–22, Order filed 4/17/96 at 43 (*Potter II*).

5. Despite this admonition, Plaintiffs persist in staging baseless collateral attacks on rulings related to claims against these Defendants.

Having separately addressed Plaintiffs' objections to the imposition of sanctions and the specific factors supporting such award, the court now turns to assessment of fees of costs.

## IV. CALCULATION OF ATTORNEY'S FEES AND COSTS

■ In order to properly calculate an award of attorneys' fees, a district court should "determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Brodziak v. Runyon,* 145 F.3d 194, 196. The court makes the following findings concerning the twelve factors set out in *Barber v. Kimbrell's Inc.,* 577 F.2d 216 (4th Cir.1978):

1. *Time and Labor Expended.* The legal defense work was conducted by two law firm partners, one of whom is a Defendant in the present action (McGuffin), one associate, and two paralegals. The timesheets are extremely detailed and provide the court with an excellent basis for review. The court has found no duplication of work. The court approves the following as reasonable hours for the following five timekeepers: (1) Clarke Dubose 100.2 hours; (2) Stan McGuffin 18.8 hours; (3) James Ward 15.2 hours; (4) Michelle Hill 1.7 hours; and (5) Mary Dixon .2

---

5. The court's Westlaw search of trial and appellate records concerning the Potters' out-of-state litigation experience reveals that the Potters, especially Kevin Potter, are seasoned litigators with more trial experience than many attorneys who have appeared in this court. *See, e.g., Harry Potter v. The Aetna Ins. Co.,* 1989 WL 38655 (E.D.Pa.1989). Plaintiffs appear versatile, and able to conduct pro se litigation as plaintiffs, *e.g., Kevin Potter v. American Loss Control Corp.,* N.J. Cumberland County Case No. 93000154, filed 2–4–93; *Kevin Potter v. Watchung Spring Water Co.,* N.J. Cumberland County Case No. 9700051, filed 1–17–97; *Kevin Potter v. Carmen Savoca,* N.J. Cumberland County Case No. 99000044, filed 1–14–99, and as pro se defendants, *Dale's Automotive & Performance v. Kevin Potter,* N.J. Cumberland County Case No. 93000179, filed 2–9–93;

*Ushler v. Harry Potter, Marguerite Potter, Kevin Potter, Cinthia Potter, & East Side Auto Body,* N.J. Cumberland County Case No. 89001477, filed 8–25–89; *Hortunati v. Kevin Potter,* N.J. Cumberland County Case No. 90000888, filed 6–4–90; *United Jersey Bank/South v. Kevin Potter,* N.J. Cumberland County Case No. 88001753, filed 1–13–88; and *General Motors Acceptance Corp. v. Kevin Potter,* N.J. Cumberland County Case No. 89000369, filed 3–8–89. Although other litigation involving a "Kevin Potter" or other named Potters was also listed in the New Jersey records database (NJ–LS), the court did not include such information in the preceding summary unless the court was able to verify that the Potter(s) so-named had the same address as the Millville, New Jersey, address listed by Plaintiffs with this court as their mailing address.

hours. The total reasonable hours approved by the court is 136.1 hours.

2. *Novelty and Difficulty of questions raised.* The issues in this case are not novel and, in fact, one justification for the sanctions is that Plaintiffs raise the same issues repeatedly without success. Nevertheless, Plaintiffs' "shotgun" approach to pleading leaves Defendants with no choice but to frame a response.

3. *Skill required to properly perform the legal services rendered.* Because no oral argument was needed in this case, the skills required involved primarily writing and research.

4. *Attorney's opportunity costs.* The court credits counsels' statements that had they not been working on this file, they could have been engaged in other work being compensated at the same, or higher, rates.

5. *The customary fee for like work.* The timekeepers' invoices were submitted to the court based on the following hourly rates: (1) Clarke Dubose @ $185/hr; (2) Stan McGuffin @ $115/hr; (3) James Ward @ $75/hr; (4) Michelle Hill @ $70/hr; (5) Mary Dixon @ $35/hr. Having reviewed its prior orders in civil attorneys' fee awards in this community for similar work, the court finds some minor downward modification necessary. The court approves the following as reasonable hourly rates for the timekeepers: (1) Clarke Dubose @ $150/hr; (2) Stan McGuffin @ $115/hr; (3) James Ward at $72/hr;[6] (4) Michelle Hill @ $50/hr; and (5) Mary Dixon @ $35/hr. Multiplying the total reasonable hours of 136.1 hours times the appropriate reasonable rates yields a lodestar calculation of $18,378.40. Defendants' also seek total costs of $872.82, representing Westlaw research costs and photocopying costs primarily, which are reasonable to the court. The total adjusted lodestar for fees and costs is $19,251.22.

6. *Attorney's expectations at the outset of litigation.* Not applicable.

7. *Time limitations imposed by client or circumstances.* Not applicable.

8. *Amount in controversy and results obtained.* Plaintiffs' complaint sought actual damages of $5 million. The result obtained, a favorable dispositive motions ruling on all claims for Defendants, was a total success.

9. *Experience, reputation and ability of counsel.* The law firm of Sinkler & Boyd, P.A., is a well respected, highly successful firm in this legal community. Mr. Dubose has substantial experience in both state and federal courts. Mr. McGuffin's dual role as Defendant/counsel in this case enabled him to bring a knowledge of historical facts and circumstances to the file that avoided some duplication of work and shortened the familiarization process for Mr. Dubose. Mr. Ward is well-credentialed, and appears to have rendered useful services in this litigation.

10. *Undesirability of case within the legal community.* In the court's opinion, civil litigators from large law firms handling primarily commercial defense work do not typically relish handling litigation with pro se plaintiffs. Often, as in this case, the pleadings are jumbled and verbose. The legal theories are hard to discern, and once uncovered, are constantly shifting. Moreover, pro se parties are not usually subject to Codes of Professional Conduct and therefore can present vexatious special challenges. To this extent, *Potter* litigation is undesirable.

11. *Nature and length or professional relationship between attorney and client.* Counsel's firm has long experience representing Defendant Wachovia Bank.

12. *Attorney's fees awards in similar cases.* Based on the court's experience, the total attorney's fees and costs award of $19,251.22 is quite reasonable. The court notes that some work had already been "written off" prior to any invoice being submitted to this court, so that Defendants will likely have paid counsel more than any monetary sanctions award will ever return to them (even without factoring in the court's reduction in the reasonable hourly rates for certain timekeepers).

---

**6.** The invoice for Mr. Ward actually was figured at $72/hr but Defendants' petition erroneously cited $75/hr as the hourly basis.

Based on the above consideration of factors, the court GRANTS Defendants' Motion for Sanctions and awards attorneys' fees and costs in the total amount of $19,251.22.

## V.  IMPOSITION OF PREFILING INJUNCTION

■ Pursuant to Rule 11, FRCP, pleadings must be well grounded in fact, well grounded in law, and not interposed for an improper purpose. *Introcaso v. Cunningham*, 857 F.2d 965, 970 (4th Cir.1988). Based on the complete record before the court in *Potter IV*, the court specifically finds that Plaintiffs have violated the following provisions of Rule 11, FRCP:

1.  Plaintiffs' claims have been presented, in part, for an improper purpose of harassing Defendants;

2.  Plaintiffs' claims have been unwarranted by existing law or by any nonfrivolous argument for a change in the law;

3.  Plaintiffs' claims and diverse factual accusations have often had no evidentiary support whatsoever, and are often completely contradicted by unassailable record evidence.

The March 24 order recognized that this court, which has responsibility to give timely attention to all litigants before it, "has a responsibility to prevent single litigants from unnecessarily encroaching on the judicial machinery needed by others." 3/24/99 Order at 18 (citation omitted).

In *McMahon v. F & M Bank–Winchester*, 45 F.3d 426, 1994 WL 719695 (4th Cir.1994) (unpublished), the Fourth Circuit affirmed a district court's imposition of a prefiling injunction on a pro se litigant and an award of Rule 11, FRCP, monetary sanctions of $42,378. The prefiling injunction entered by the court in *McMahon* barred the plaintiff from filing any civil action in any federal court without leave of court. Furthermore, the plaintiff had to certify in her application for leave to file any claim that her claim had never been "raised or disposed of on the merits by any state or federal court." In addition, the prefiling injunction prohibited the plaintiff from filing any action related to the facts or parties in the litigation.

In finding no abuse of discretion in the district court's award of monetary sanctions or imposition of a prefiling injunction, the Fourth Circuit noted that the plaintiff had, like Plaintiffs here, engaged in vexatious conduct in state and federal courts for several years concerning the same incident. The plaintiff's legal theories were repeatedly rejected by numerous courts. All of this litigation in *McMahon* resulted in needless expense on opposing parties and an undue burden on the district court.

*McMahon* is strong precedent supporting the court's action. *Potter* litigation has haunted this court since it first assumed the district bench in March of 1994, when *Potter II* was transferred to this court by another judge. This court, the Fourth Circuit, and South Carolina state courts have since that time collectively published a thick portfolio of opinions patiently addressing Plaintiffs' frivolous claims. The time has come to put a curb to Plaintiffs' vexatious litigation over the Crestwood Golf Course purchase, statements made during state court proceedings, and against state-appointed receivers over which this court has no jurisdiction. Accordingly, the court GRANTS Defendants' Motion for Sanctions in the form of a prefiling injunction. The contours of the prefiling injunction are detailed below in full.

## VI.  CONCLUSION

The Clerk may now enter final judgment, in the form detailed below, regarding all outstanding issues in this matter. The court adopts and incorporates the Order and Recommendation filed by United States Magistrate Judge McCrorey with respect to Plaintiffs' Motion to Amend and Defendants' motions for summary judgment. Thus, the court DENIES Plaintiffs' motion 63–1; but GRANTS Defendants' motions to dismiss/for summary judgment, numbered 24–1, 26–1, 29–1, 58–1, and 70–1.

Based on Plaintiffs' repeated Rule 11, FRCP, violations, the court also GRANTS the McGuffin Defendants' Motion for Sanctions, 67–1. Plaintiffs are ORDERED to pay the McGuffin Defendants $19,251.22 for attorneys' fees and costs as a sanction for their violations.

IT IS FURTHER ORDERED that Plaintiffs Kevin Potter, Marguerite Potter, Harry Potter, Theodore Potter and Dale Potter, jointly and severally, shall each be subject to a prefiling injunction in federal court litigation in the District of South Carolina. If, in future, Plaintiffs wish to initiate any new litigation in this federal district court, Plaintiffs must submit an "Application for Leave to File Suit in Federal Court" along with a copy of this order imposing the prefiling injunction to the Clerk of Court. This requirement does not apply, however, to any appeals Plaintiffs may take from lower federal courts in the District of South Carolina. Accompanying the "Application for Leave to File Suit in Federal Court," each named Plaintiff must attach a separate dated and notarized declaration or affidavit certifying that the matters raised therein have never before been raised or disposed of on the merits by any state or federal court. Plaintiffs are cautioned that violations of this prefiling injunction may constitute contempt of court and be subject to civil and criminal penalties.

IT IS SO ORDERED.