KING, Circuit Judge,
dissenting:
A majority of our en banc Court imposes the severest of sanctions against Colonel Aikens for his lawyer’s failed, but sincere attempt to have the district court address the merits of Aikens’s claim that his former military associates engaged in deplorable conduct that worked a serious deprivation of his civil rights. Having concluded, wrongly, that it lacked authority to decide the dispute, the district court dispatched Aikens to embark on a futile quest to vindicate its - jurisdictional theory. Though the court believed itself rid of the matter, it was required by long-standing Supreme Court precedent to nonetheless retain the case and enter a stay sua sponte. The district court instead erroneously dismissed it, assuring Aikens that he “may return to federal court” if he truly belonged there. Aikens v. Ingram, 513 F.Supp.2d 586, 592 (E.D.N.C.2007).
Aikens took the court up on its offer, accepting its invitation to return after verifying that proceeding before the Army Board for Correction of Military Records (the “ABCMR”) was unnecessary. That process took less than seven months, an accomplishment that, given the oft-glacial pace of civil litigation, can hardly be criticized. But because counsel sought to attract the district court’s attention through a timely Rule 60(b) motion rather than risking his client’s cause by filing a potentially untimely new complaint, the court yanked the welcome mat from beneath Aikens’s feet. Now, on appeal, the en banc majority has failed to appreciate that this entire predicament was not the result of counsel’s disputably poor choices, but was instead caused by the district court’s demonstrably wrong ones. Unwilling to lend my sanction to the injustice below, I must dissent.
I.
A.
Colonel Aikens asserts that, while he was deployed to the Middle East supporting Operation Iraqi Freedom, his personal email was illegally intercepted and used to compel his retirement from the North Carolina Army National Guard (the “Guard”) after thirty-two years of service. Those responsible, according to Aikens, were Adjutant General William E. Ingram, Jr., and Lieutenant Colonel Peter von Jess. On April 27, 2006, Aikens filed his § 1983 *508 claim in the Eastern District of North Carolina, alleging that Ingram and von Jess had contravened his Fourth Amendment rights. Over Aikens’s vehement objection, the district court dismissed the § 1983 claim on the mistaken belief that Aikens was required, but had failed, to exhaust remedies with the ABCMR. See Aikens v. Ingram, 513 F.Supp.2d 586, 588 (E.D.N.C.2007).
Generally speaking, if a service-member plaintiff fails to exhaust “available intraservice remedies,” his federal claim against the military is “a nonjusticiable military controversy.” Williams v. Wilson, 762 F.2d 357, 360 (4th Cir.1985). We have recognized an exception, however: “If the outcome would predictably be futile, the doctrine of exhaustion will not apply.” Guerra v. Scruggs, 942 F.2d 270, 276 (4th Cir.1991) (internal quotation marks omitted). In conformance with our precedent, Colonel Aikens contended in the district court that there were no “available intraservice remedies” and the outcome of an ABCMR application “would predictably be futile” because the ABCMR lacked jurisdiction to accord him any relief. See 32 C.F.R. § 581.3(e)(l)(iii) (providing that an “application may be returned without action if ... [t]he ABCMR does not have jurisdiction to grant the requested relief’); cf. Guerra, 942 F.2d at 277 (observing that “the inability of the [ABCMR] to give the plaintiff all the relief he seeks does not automatically excuse the failure to exhaust” (citing Williams, 762 F.2d at 360 n. 6)). Aikens principally maintained — with citation to numerous supporting authorities — that his separation from the Guard was a state matter for which no federal ABCMR remedies existed. The court disagreed, however, analogizing to our decisions where some ABCMR relief was thought to be available and thus exhaustion was deemed to be required. See Aikens, 513 F.Supp.2d at 591-92.
Once the district court dismissed his case, Colonel Aikens was faced with two options. First, he could proceed directly to the ABCMR — plainly a far more suitable and definitive arbiter of its own jurisdiction than any federal court. See Randall v. United States, 95 F.3d 339, 348 (4th Cir.1996) (recognizing that, to the extent federal courts may review ABCMR decisions, “such decisions can be set aside only ‘if they are arbitrary, capricious, or not based on substantial evidence’ ” (quoting Chappell v. Wallace, 462 U.S. 296, 303, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983))).[1] Alternatively, Aikens could appeal to this Court and, if we affirmed the district court, end up before the ABCMR anyway. Aikens selected the obvious and more efficient option: filing the ABCMR application. Four months later, just as Aikens had predicted, the ABCMR determined that it was powerless to act on the application because the relief sought therein was “not within [its] purview.” J.A. 43.[2]
This development brought Colonel Aikens to another crossroads. On the one *509 hand, because his § 1983 claim had been dismissed without prejudice, he could reassert it in a newly filed action. Such a course was problematic, however, because Ingram and von Jess were already maintaining that the limitations period on the § 1983 claim had expired. On the other hand, Aikens could seek relief under Rule 60(b). The Rule 60(b) path was attractive because it would place Aikens in the same position he had occupied prior to the district court’s erroneous exhaustion ruling— as the proponent of an indisputably timely § 1983 claim. Moreover, the court had explicitly assured Aikens that, if his position were shown to be correct, and “the ABCMR does not have jurisdiction,” he could “return to federal court.” Aikens, 513 F.Supp.2d at 592. In these circumstances, Aikens understandably chose to file his Rule 60(b) motion. In so doing, he explained to the court that Rule 60(b) relief was necessary to avoid any statute of limitations problem, and he reminded the court of its explicit assurance. The crux of Aikens’s position was clear-cut: He was entitled to Rule 60(b) relief because the court had erred in ordering exhaustion of intraservice remedies and had thereby caused his limitations period predicament.
In assessing the Rule 60(b) motion, the district court recognized that the statute of limitations on the § 1983 claim had “seemingly” expired. See Aikens v. Ingram, No. 5:06-cv00185, slip op. at 7-8, 2008 WL 4831420 (E.D.N.C. Nov. 5, 2008) (the “Rule 60(b) Order”).[3] The court observed that, according to Colonel Aikens’s complaint, he “discovered the facts underlying his cause of action on or about November 24, 2003.” Id. at 7. The court further observed that “the statute of limitations seemingly began to run on that date, and it seemingly expired three years later, on November 24, 2006.” Id. at 8. Obviously, if the limitations period ended on November 24, 2006 — as the court assumed — it expired prior to not only the ABCMR determination of February 6, 2008, but also before the erroneous dismissal on September 13, 2007.[4]
Notwithstanding its supposition that Colonel Aikens had been time-barred from re-asserting his § 1983 claim in a new action even prior to the dismissal, the district court refused to vacate the judgment under Rule 60(b). The court justified its denial of relief by attributing the statute of limitations predicament to “two tactical decisions with adverse affects [sic]” made by Aikens himself — his decision not to exhaust intraservice remedies before filing suit and his decision to “wait[ ] to file suit over two years into the statute of limitations, [leaving] little time if a court were to determine that exhaustion was required.” Rule 60(b) Order 8.[5] Even though Aikens *510 had accurately concluded that such an exhaustion effort was unnecessary because the ABCMR lacked jurisdiction to accord relief, in the court’s view Akens should have foreseen that it would incorrectly rule to the contrary. And, having anticipated the court’s error, Akens should have acted to ensure that his § 1983 claim would not thereby be rendered untimely.[6]
B.
In pursuing relief, Colonel Akens specifically invoked clause (6) of Rule 60(b), which authorizes a court to relieve a party from a final judgment for “any other reason [not spelled out in clauses (l)-(5) ] that justifies relief.” Of course, to be entitled to Rule 60(b)(6) relief, the movant must demonstrate “extraordinary circumstances.” See Valero Terrestrial Corp. v. Paige, 211 F.3d 112, 118 n. 2 (4th Cir.2000) (explaining that “the difference between Rule 60(b)(6) and Rules 60(b)(l)-(5) is that ‘extraordinary circumstances’ are required to bring the Rule 60(b)(6) motion within the ‘other reason’ language of that Rule” (internal quotation marks and alterations omitted)). Nevertheless, we have had no difficulty recognizing the existence of extraordinary circumstances where — as here — the district court erroneously issued the underlying judgment. See White v. Investors Mgmt. Corp., 888 F.2d 1036, 1041 (4th Cir.1989); Compton v. Alton Steamship Co., 608 F.2d 96, 106-07 (4th Cir.1979).[7]
*511 In White, a dispute over the amount due the plaintiff on a stock redemption, the district court had awarded summary judgment to the defendant “without notice and without a hearing, even though there was an outstanding order [issued by the magistrate judge] compelling the defendant ... to produce a critical document in the determination of the case.” See 888 F.2d at 1037, 1040. We reversed the court’s denial of Rule 60(b) relief, explaining:
When the court overlooks the dispositive issue in a case and proceeds to decide a case summarily before discovery is concluded and before an order of discovery has been complied with, there has been a mistake and inadvertence and one that works an injustice. Rule 60(b) — especially as amended in 1948 by the addition of (b)(6) — clearly covers the plaintiffs motion to vacate the summary judgment entered here.
Id. at 1041. In Compton, an action for unpaid wages in which a default judgment was entered against the defendant,. the district court had erroneously awarded the plaintiff statutory penalty wages, resulting in an award “almost two hundred times” the amount plaintiff was actually owed. See 608 F.2d at 99, 101. We concluded that — because of “the unusual and extraordinary circumstances of this case and in view of the unconscionably unjust judgment entered” — this was “just such an extraordinary case where [Rule 60(b)(6)’s] ‘catch-all’ ground was intended to afford relief.” Id. at 106, 107 (emphasis omitted).
On appeal, Colonel Aikens also relies on similarly decided Rule 60(b)(6) decisions from other jurisdictions, specifically involving erroneous dismissals for failure to exhaust. See Thompson v. Bell, 580 F.3d 423 (6th Cir.2009); Whitmore v. Avery, 179 F.R.D. 252 (D.Neb.1998). In Thompson, the district court had dismissed several of the petitioner’s federal habeas claims because, in prior state proceedings, he had failed to seek discretionary review of those claims in the Supreme Court of Tennessee. See 580 F.3d at 433. Following the Tennessee supreme court’s promulgation of a rule clarifying that state habeas petitioners need not appeal to that court to exhaust their claims, the Thompson petitioner unsuccessfully moved in the district court for Rule 60(b)(6) relief from its dismissal order. See id. The Sixth Circuit reversed the denial of the clause (6) motion, however, concluding that promulgation of the new Tennessee supreme court rule was an “extraordinary circumstance” warranting such relief. See id. at 442-43. Notably, the Sixth Circuit distinguished Thompson from Gonzalez v. Crosby, 545 U.S. 524, 533, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005), wherein the Supreme Court deemed clause (6) relief inappropriate based on a recent change in federal decisional law regarding the interpretation of a federal habeas procedural statute. The Thompson court explained that, unlike the change in federal law in Gonzalez, the change in Tennessee state law was an extraordinary circumstance because “refusing to recognize it would disserve ... comity interests ... by ignoring the state court’s view of its own law.” Thompson, 580 F.3d at 443 (internal quotation marks and emphasis omitted).
Finally, in Whitmore, after dismissing the petitioner’s federal habeas claim for failure to exhaust state remedies, the district court itself recognized that it had made a mistake worthy of Rule 60(b)(6) relief. See 179 F.R.D. at 258-59. The court observed, inter alia, in terms that are strikingly applicable here, that “the petitioner [could not] have followed my instructions and exhausted his remedies, because the claim was not one that could be exhausted or that federal law requires to be exhausted.” Id. at 259. Accordingly, the court concluded that “this is the type of case that warrants the exceptional relief contemplated by Rule 60(b)(6).” Id.
*512 Likewise, the extraordinary circumstances demonstrably present here demand that Colonel Aikens be afforded Rule 60(b)(6) relief from the district court’s error. As Aikens has aptly emphasized,
Appellees unlawfully — and possibly criminally — invaded Col. Aikens’ privacy by monitoring and intercepting his emails, while he was serving his country in a combat zone, in violation of the Fourth Amendment and [42] U.S.C. § 1983. Col. Aikens has yet to be heard on the merits of his claims and, without relief, may never be. Col. Aikens’ first timely attempt to have his case heard was dismissed for failure to exhaust intraservice remedies, despite the fact that no intraservice remedies were available. His second attempt, this time before the ABCMR, as directed by the district court, was rejected because, as Col. Aikens predicted, the ABCMR lacks authority to provide the relief Col. Aikens seeks. Col. Aikens’ third attempt, to revive his first lawsuit through Rule 60(b)(6) after exhausting intraservice remedies with the ABCMR as required by the district court, was denied. Col. Aikens now faces a statute of limitations defense to any future attempt to file a new lawsuit. These circumstances are exceptional.
Reply Br. of Appellant 1-2 (footnote omitted). Indeed, in these circumstances, the court has committed “a mistake ... that works an injustice,” see White, 888 F.2d at 1041, and “fundamental fairness and considerations of justice ... command that the judgment ... be vacated,” see Compton, 608 F.2d at 107. Notably, in addition to accomplishing justice for Aikens, Rule 60(b)(6) relief would serve comity interests by recognizing that the ABCMR is entitled to define its own jurisdiction. Cf. Thompson, 580 F.3d at 443 (concluding that Rule 60(b)(6) relief furthered comity interests by recognizing and accepting “the state court’s view of its own [habeas corpus] law” (internal quotation marks omitted)).
To be sure, not all mistakes made by a court are sufficient to warrant Rule 60(b) relief. We have admonished that “[w]here the motion is nothing more than a request that the district court change its mind, ... it is not authorized by Rule 60(b).” United States v. Williams, 674 F.2d 310, 313 (4th Cir.1982). Furthermore, we have said that “we may not review the merits of the underlying order” in reviewing the denial of Rule 60(b) relief. MLC Auto., LLC v. Town of S. Pines, 532 F.3d 269, 277 (4th Cir.2008) (internal quotation marks omitted). Here, however, Colonel Aikens was not asking the district court to “change its mind” about its exhaustion ruling, or, by appealing, seeking our independent review of the merits of the court’s decision. Rather, he is asking for the simple recognition, based on the ABCMR’s assessment of its jurisdiction, that the district court itself erred in concluding that he was required to exhaust intraservice remedies. These extraordinary circumstances warrant Rule 60(b)(6) relief.
II.
The foregoing amply illustrates that had the district court been inclined to grant Aikens’s Rule 60(b) motion, it certainly had the discretion to do so — a proposition that I trust would not stir much controversy even among the members of the en banc majority. By far the more provocative legal question is whether the court’s denial of the motion constituted an abuse of its discretion.
Put simply, the abuse of discretion standard of review does not confer upon a district court carte blanche to close its doors to a litigant who is merely following the court’s own advice. Indeed, we have previously emphasized that “even under an abuse of discretion standard, we still must *513 engage in ‘meaningful appellate review.’” United States v. Abu Ali, 528 F.3d 210, 261 (4th Cir.2008). Our precedent counsels that “a reviewing court is obliged to reverse if the court has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.” Gannett Co., Inc. v. Clark Const. Group, Inc., 286 F.3d 737, 741 (4th Cir.2002) (internal citation omitted). This is so “[e]ven if a district court applies the correct legal principles to adequately supported facts.” Id.
In this case, the district court erroneously dismissed Aikens’s claim, thereby inducing him unwittingly to pursue a litigation strategy that ultimately prevented his claim from being heard. Afforded the opportunity to set the matter straight, the court instead perpetuated and compounded its earlier mistake. In such circumstances, I cannot help but hold a definite and firm conviction that, by denying Aikens’s Rule 60(b) motion, the district court committed a “clear error of judgment.”
The majority holds that the district court did not abuse its discretion because it supposes that Aikens may have had other litigation alternatives. However, the majority offers no support for the contention that the presence of other litigation alternatives — even if true — -would justify the district court’s denial of Aikens’s motion. The district court’s culpability for Aikens’s statute of limitations predicament itself constitutes extraordinary circumstances such that the court abused its discretion by subsequently denying Aikens’s Rule 60(b) motion.[8] With all respect to the majority, emphasizing the steps that counsel might have taken to extricate his client from the mess below unfairly deflects the focus from the district court and inappropriately marginalizes the efforts that counsel, in good faith, did take. I therefore address — and reject — the majority’s theories in turn.
A.
The majority criticizes counsel for not appealing the district court’s jurisdictional ruling. But what would Aikens have gained from an appeal? Less than seven months after the dismissal, Aikens was back before the court with an unequivocal decree that the ABCMR was an improper forum for this particular dispute, from no less an authority than the ABCMR itself. There was virtually no chance that we would have rendered a comparable judgment so quickly, given our systemic druth *514 ers for orderly briefing, unhurried argument, and deliberate decision-making. The only advantage that Aikens would have realized from a Fourth Circuit judgment is the insurance it would have provided against a second unanticipated and unjustified refusal of the district court to entertain the merits of his claim. Viewed through the perfect prism of hindsight, that might have been a valuable benefit. Through the soot-stained obsidian of the then and there, however, the potential boon of an immediate appeal was by no means apparent.[9]
B.
True, counsel could have requested a stay while he attempted to proceed before the ABCMR. But, in accordance with procedures long established by the Supreme Court, the district court should have entered a stay on its own initiative. In General American Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 422, 60 S.Ct. 325, 84 L.Ed. 361 (1940), the Court confronted a dispute between a shipper of coconut oil and a supplier of railroad cars for rent, in which the latter ceased honoring its contract to credit the shipper with mileage allowances paid by the railroads using the rental cars to haul the shipper’s goods. The car owner premised its refusal on an intervening decision of the Interstate Commerce Commission (“ICC”) that arguably rendered illegal the parties’ business arrangement.
A unanimous Court, speaking through Associate Justice Roberts, rejected the ICC’s contention, as amicus curiae, that the federal courts lacked jurisdiction over the matter, observing that “[t]he action was an ordinary one in assumpsit on a written contract.” General American, 308 U.S. at 432, 60 S.Ct. 325. The Supreme Court nevertheless held that the district court “should not have proceeded to adjudicate the rights and liabilities of the parties in the absence of a decision by the [ICC] with respect to the validity of the practice involved in the light of the provisions of the Interstate Commerce Act.” Id. at 428, 60 S.Ct. 325. The Court confirmed that the dispute was within the administrative authority of the ICC to decide, although Congress had left it to the courts to enforce those lawful decisions. In so ruling, the Supreme Court issued an unambiguous directive to district courts:
When it appeared in the course of the litigation that an administrative problem, committed to the [ICC], was involved, the court should have stayed its hand pending the Commission’s determination of the lawfulness and reasonableness of the practices under the terms of the Act. There should not be a dismissal, *515 but ... the cause should be held pending the conclusion of an appropriate administrative proceeding. Thus, any defenses the [defendant] may have will be saved to it.
Id. at 433, 60 S.Ct. 325 (citations omitted).
Over the years, the Court has reinforced the proper procedure in these sorts of cases. See, e.g., United States v. Mich. Nat’l Corp., 419 U.S. 1, 4-5, 95 S.Ct. 10, 42 L.Ed.2d 1 (1974) (per curiam) (documenting “common practice” of district courts to retain jurisdiction through stay while litigation proceeds through state courts, and noting that same procedure generally applies “when the resolution of a claim cognizable in a federal court must await a determination by an administrative agency having primary jurisdiction”). The primary jurisdiction doctrine applies “to claims properly cognizable in court that contain some issue within the special competence of an administrative agency. It requires the court to enable a ‘referral’ to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling.” Reiter v. Cooper, 507 U.S. 258, 268, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993) (citations and footnote omitted). It is distinguishable from the doctrine of exhaustion of administrative remedies, applicable to disputes where agency relief must be pursued as a prerequisite to redress in the courts, and requiring any such suit to be dismissed as premature. See id. at 269, 113 S.Ct. 1213; Cavalier Tel., LLC v. Va. Elec. & Power Co., 303 F.3d 316, 322 n. 10 (4th Cir.2002) (citing, inter alia, Reiter).
Absent an exhaustion bar, dismissal is generally proper only “where there is assurance that no party is prejudiced thereby.” Mich. Nat’l at 5, 95 S.Ct. 10 (citing Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952) (footnote omitted)); see also Reiter at 268-69, 113 S.Ct. 1213 (approving dismissal without prejudice “if the parties would not be unfairly disadvantaged”). In Reiter, the Supreme Court declined to impose a requirement of ICC exhaustion as to counterclaims asserted in response to an adversary proceeding in bankruptcy, expressing its concern that “the limitations period for filing actions ... could expire before the ICC acted.” 507 U.S. at 271, 113 S.Ct. 1213.
As with Reiter, the prejudice inquiry in other cases has focused on limitations issues. See TON Servs., Inc. v. Qwest Corp., 493 F.3d 1225, 1242-43 (10th Cir.2007) (acknowledging dismissal option “pending primary jurisdiction referral,” but counseling that “[w]here damages are sought and the relevant statute of limitations might preclude relief ... a stay is likely to be preferable”); Guglielmo v. Long Island Lighting Co., 83 A.D.2d 481, 445 N.Y.S.2d 177, 183 (1981) (opining that, because of potential prejudice to plaintiff by running of statute of limitations, lower court “should have denied the cross motion for dismissal, and, after referring plaintiff to the PSC, should have, sua sponte, stayed this action pending the filing, and final resolution, of [an administrative] complaint” (citing Mich. National))-, see also S.S.W., Inc. v. Air Transp. Ass’n of Am., 191 F.2d 658, 664 (D.C.Cir.1951) (endorsing General American approach in antitrust action upon primary jurisdiction referral to Civil Aeronautics Board). Had the district court in this case properly adhered to the dictates of General American and its progeny, the resultant stay would have wholly obviated any need for a lengthy appeal or for Aikens having to ultimately choose between the Scylla of Rule 60(b) reinstatement and the Charybdis of starting over. The court’s error of law and its failure to consider the same in denying Colonel Aikens Rule 60(b)(6) relief from the improper dismissal of his claims was, “by definition,” an abuse of its discre *516 tion. Koon v. United States, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).[10]
C.
In connection with the majority’s assertion that Aikens could have successfully proceeded with a new suit instead of seeking to revive the original action, counsel’s supposed “concession” at oral argument, see ante at 502-03, that the hypothetical course would have been timely taken is hardly determinative. No court has yet endeavored to decide the issue, see supra note 4, and it is not easily resolved.
First, it is not entirely clear when the underlying cause of action accrued, although the Amended Complaint recites that “[o]n or about November 24, 2003, [Aikens] was informed that [Major David B.] Culbreth was ... being involuntarily separated ... based upon an e-mail message that Culbreth sent to [Aikens] on August 17, 2003.” J.A. 13. Further, on that same date, Aikens “was also informed that ... [Adjutant General William E.] Ingram used illegal means to obtain the.... subject email message ... sent from Culbreth’s personal email account ... at home in Fayetteville, North Carolina, to [Aikens] who was stationed in Camp Doha, Kuwait.” Id. Aikens’s computer had been operational, however, almost from his arrival in Kuwait on April 21, 2003, and it is not inconceivable that if this case ever proceeded to discovery, the evidence might reveal an earlier accrual date.
Second, and more importantly, it is far from certain how much, if any, time since Aikens filed suit on April 27, 2006, ought to be excluded from the limitations calculus. Federal civil rights actions borrow the analogous state limitations period, and it has been assumed from the beginning that North Carolina’s three-year period to commence personal injury actions governs here. Cf. Franks v. Ross, 313 F.3d 184, 194 (4th Cir.2002). It is also true, however, that we apply the equitable tolling rules of the forum state. See Wade v. Danek Medical, Inc., 182 F.3d 281, 289 (4th Cir.1999). Though the North Carolina courts accord parties one year after taking a voluntary dismissal to refile an otherwise time-barred action so long as the original suit was filed within the limitations period, see N.C. GemStat. § 1A-1, Rule 41A; Georgia-Pacific Corp. v. Bondurant, 81 N.C.App. 362, 344 S.E.2d 302, 304 (1986), Aikens’s claim was not voluntarily dismissed.
Consequently, and notwithstanding counsel’s understandable efforts to keep from conceding as stale any sort of claim his client may yet pursue, the precise date by which Aikens was required to file in *517 order to forestall a legitimate limitations defense remains very much an open question. It was no less so on March 31, 2008, when, back before the district court, counsel had to decide how to proceed. Litigators, by training and experience, tend to be careful, risk-averse sorts, who are loath to leave the house with a mere belt keeping their pants in place, especially when they also have a perfectly good pair of suspenders hanging in the closet. I do not doubt for an instant that counsel, buoyed by the district court’s express invitation to return in the initial proceeding, discounted the possibility of commencing a new suit as entailing needless risk of a meritorious limitations defense. Under the circumstances, counsel probably expected his Rule 60(b) motion to be summarily granted, with the new-suit option reserved as part of a fallback plan and not invoked prematurely.
Of course, starting anew must have seemed even less palatable after the court delayed its ruling until November 5, 2008, taking longer to deny the Rule 60(b) motion than Aikens did to return from his enforced dalliance with the ABCMR. But let us suppose that counsel indeed had pressed forward with refiling instead of taking this appeal, in which case it is apparent that the district court would have had to resolve the limitations issue. In so doing, the court would not have lacked the means to consider the equities. The North Carolina courts recognize the general principle that “time frames may be tolled where equitable considerations justify their suspension.” Republic Indus. v. Teamsters Joint Council, 718 F.2d 628, 644 (4th Cir.1983) (quoted in Fairway Outdoor Adver. v. Edwards, 197 N.C.App. 650, 678 S.E.2d 765, 771 (2009)). The Supreme Court of the United States has likewise acknowledged “a traditional equitable tolling principle,” if appropriately tailored and not contrary to the expressed will of the legislative branch. Honda v. Clark, 386 U.S. 484, 501-02, 87 S.Ct. 1188, 18 L.Ed.2d 244 (1967).
There is a relative paucity of North Carolina law lending insight as to the circumstances its courts might consider sufficient to justify equitable tolling of an applicable statute of limitations. A number of reported cases, however, involve some sort of misleading act or statement on the part of the defendant that justifiably induces the plaintiff to defer timely prosecution of the claim. See, e.g., Duke Univ. v. Stainback, 320 N.C. 337, 357 S.E.2d 690 (1987) (ruling that defendant debtor could not invoke statute of limitations to bar action by plaintiff creditor where debtor and his lawyer had caused creditor to forbear from collection efforts by representations that creditor would be paid from proceeds of lawsuit against third party); Nowell v. Great Atl. & Pac. Tea Co., 250 N.C. 575, 108 S.E.2d 889 (1959) (concluding that builder’s intermittent actions and assurances in attempting to correct structural construction defects before finally disclaiming further responsibility served to toll limitations period).
Although this line of authority may suffer somewhat from lack of development, I can say with some confidence that the results in cases like Stainback and Nowell obtain primarily from an innocent plaintiff having been deceived, and only secondarily from the near inevitability that the defendant has been the instrument of that deception. Equity exists to reward the deserving, more so than to punish the culpable. See Stainback, 357 S.E.2d at 692 (“Actual fraud, bad faith, or an intent to mislead or deceive is not essential to invoke the equitable doctrine of estoppel.”). The point is well illustrated in Carlile v. South Routt Sch. Dist. RE 3-J, 652 F.2d 981 (10th Cir.1981). In Carlile, the plaintiff was allowed to maintain her Title VII action although it had been filed fifty-one *518 days late. The plaintiffs dilatoriness was caused by an earlier order of the district court, entered within the commencement period, that granted a form motion allowing her to proceed without payment of fees and costs and appointing an attorney to represent her. The order further provided “[t]hat this action shall be deemed commenced upon filing of the aforesaid Motion.” Carlile, 652 F.2d at 983.
The Tenth Circuit dismissed an attempted appeal of the lower court’s interlocutory decision permitting the case to go forward, notwithstanding that the defendant was in no way responsible for the late filing. In ruling on behalf of the plaintiff, the court of appeals reasoned that “[i]nasmuch as she would suffer a considerable hardship if we were to set the order aside, we are obliged to permit the order to stand.” Carlile, 652 F.2d at 986. Subsequently, in declining relief to another late-fíler, the Supreme Court of the United States cited Carlile with approval to distinguish its situation “where the court has led the plaintiff to believe that she had done everything required of her,” from the one in which a plaintiff of her own accord deems it sufficient to file a mere right-to-sue letter as an attempted substitute for a complaint. Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam). I presume that the North Carolina courts, if confronted with an analogous situation, would find Baldwin County and, in turn, Carlile persuasive authority. The upshot is that Aikens may yet have his day in court notwithstanding the majority’s decision today.
This matter, however, should not have been enshrouded in such uncertainty. The district court in the proceedings below was confronted with a Rule 60(b) motion, and not a new complaint filed potentially out of time, but the same equitable principles doubtlessly apply. If the court could find sufficient justification to permit Aikens to file a new lawsuit, then it could' — -and should — have found the “extraordinary circumstances” necessary to grant Aikens’s motion pursuant to Rule 60(b)(6). There is no authority for the proposition that the necessary threshold showing in the latter case is any more onerous than in the former.[11] All things being equal, there is little reason to compel a plaintiff in Aikens’s shoes to submit a new complaint duplicative of the one already on file, to pay another $350 filing fee, and to draft and serve a second set of summonses on multiple defendants, waiting, perhaps, for another year or more until the “new” case ripens to the same extent as the old one had. But when all things are decidedly not equal — when resort to a remedy may very well depend on the suit being timely filed — the time has come, in the interests of justice and fairness, to stop standing on ceremony.
D.
The majority professes its fear that reinstatement of Colonel Aikens’s lawsuit in this lone instance would endanger the finality of judgments across the breadth of our domain, decreeing that the supposed mandate of the federal rules for strict deadlines admitting of few (or no) exceptions shall remain inviolate. See ante at 500-01. In another case, the majority would be right to jealously protect the familiar, if amorphous, principle that litigation, at some point, must be suffered to end. In this case, however, the litigation has not been suffered to begin.
Why that should be is an utter mystery. Colonel Aikens has pleaded facts that, if *519 true, invite outrage. The Complaint depicts a literally unwarranted intrusion into the private communiques of a citizen-soldier stationed many thousands of miles from home and serving in the best traditions of the nation’s militia, humiliated and disgraced by a nominal superior in the pursuit of an unseemly personal vendetta. That the majority has picked this particular instance to stand on ceremony and strike a mortal blow against slovenly papering of the court file is baffling. Surely whatever interest the federal courts may have in conducting their gatekeeping function with spit-and-polish regimentation is necessarily at its nadir when the cause is just, the wayfarer worthy, and the path untrodden.[12]
The majority pays lip service to these notions of justice and fairness, declaring that we have required movants like Aikens to “have a meritorious claim or defense and that the opposing party not be unfairly prejudiced.” Ante at 501.[13] Those additional requirements are not found in the text of Rule 60(b)(6), which, outside of the specific grounds enumerated in its predecessor paragraphs, enables invocation simply for “any other reason that justifies relief.” And they are honored today only in the breach, inasmuch as it is plain that Colonel Aikens’s claim is substantial on its face and that it would hardly be unfair to bring the defendants to answer for their alleged actions.
Moreover, it is of no small irony that the majority’s slavish adherence to what it characterizes as the spirit (if not the letter) of Rule 60(b)(6), contravenes the explicit command of the rule that governs all the rest — Rule 1 — which provides that all of the rules of civil procedure “should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding.” Fed. R.Civ.P. 1; cf. Nat'l Bondholders Corp. v. McClintic, 99 F.2d 595, 600 (4th Cir.1938) (observing that, in accordance with Rule 1, successful administration of all federal civil procedure rules depend upon “their application in various situations ... be[ing] subject to sound judicial discretion”). The majority thus approves what is, in effect, a dismissal sanction upon Colonel Aikens for what it perceives to be the shortcomings of his lawyer (a perception that I enthusiastically reject). We have proclaimed that such a drastic course of action “is usually inappropriate when it unjustly penalizes a blameless client for the attorney’s behavior.” Hillig v. Comm’r of Internal Revenue, 916 F.2d 171, 174 (4th Cir.1990). Although our occasional refusal to enforce against clients the expected consequences of their lawyers’ negligence typically arises in the context of a Rule 41(b) involuntary dismissal, perhaps as a discovery sanction, see id., or for an attorney’s failure to diligently prosecute the case, see McCargo v. Hedrick, 545 F.2d 393 (4th Cir.1976), there *520 is no good rationale to exclude the same concept from our equities calculus here.
III.
At the end of the day, Colonel Aikens was right — and the district court was wrong — about whether so-called “exhaustion” before the ABCMR was necessary before Aikens could pursue his 42 U.S.C. § 1983 claim. The misperception on the court’s part need not have been more than a hiccup had it simply followed Supreme Court precedent and ordered a stay. Rather than acknowledging its errors upon Aikens’s return, however, the district court compounded them by rejecting his motion pursuant to Rule 60(b)(6). The court did so although it had explicitly assured Aikens that he could have his claims reinstated if his position was vindicated. Although the district court may now wish to retreat from that representation, Aikens was plainly entitled to rely on the court’s word. The majority’s decision today to the opposite effect, grounded in condemning Colonel Aikens for losing an unwinnable game of “gotcha,” discredits our system of justice.
If the majority’s approach is all it takes to foreclose a finding of extraordinary circumstances for Rule 60(b)(6) relief, that is, if a court can punish a movant for pursuing reasonable and legitimate strategies simply because — with the benefit of hindsight — the court can conjure up possible alternatives, it is hard to imagine that Rule 60(b)(6) relief can ever be obtained. To the contrary, I am convinced that, in light of the serious nature of Aikens’s claims, the lack of unfair prejudice to the defendants, and the court’s own significant contribution to the untidiness of the situation, its denial of relief was a clear abuse of discretion.[14] Consequently, I would vacate the district court’s Rule 60(b) Order and remand for such further proceedings as may be appropriate.
I respectfully dissent, and I am pleased to state that Judge Motz, Judge Gregory, Judge Davis, and Judge Keenan concur in this dissenting opinion.

. Indeed, a federal court's view of the ABCMR's jurisdiction is of no import when the ABCMR itself has spoken on the issue. The federal courts may only forecast how the ABCMR might delineate its own jurisdiction, not define the ABCMR's jurisdiction for it. See Guerra, 942 F.2d at 276 (recognizing that, in determining whether exhaustion is necessary, we must assess "[i]f the outcome would predictably be futile” (internal quotation marks omitted)); see also Randall, 95 F.3d at 348 (observing that, insofar as ABCMR decisions are subject to federal court review at all, "such decisions can be set aside only if they are arbitrary, capricious, or not based on substantial evidence” (internal quotation marks omitted)). As the district court itself acknowledged, courts must "grant[j deference to the military to handle its own affairs.” Aikens, 513 F.Supp.2d at 591-92.

. Citations herein to "J.A. -" refer to the contents of the Joint Appendix filed by the parties to this appeal.

. The district court’s unpublished Rule 60(b) Order is found at J.A. 44-52.

. The district court declined to “resolve [the statute of limitations] issue definitively,” explaining that "[if] plaintiff files a new action, and defendants assert the statute-of-limitations defense, the court will then address the issue.” Rule 60(b) Order 8 n. 1.

. Executing an about-face, the court disclaimed ever “implying that plaintiff could return to court in this action.” Rule 60(b) Order 7. “Rather,” according to the court, it "was making the unremarkable observation that if the ABCMR determined that it lacked jurisdiction, nothing in the court's dismissal would prevent plaintiff from filing a new action against Ingram and von Jess.” Id. In the very next paragraph of the Rule 60(b) Order, however, the court contradicted its assertion that its dismissal did not foreclose a new action, opining that the statute of limitations on Aikens's § 1983 claim had likely expired well before the dismissal was even entered. See id. at 7-8. Surprisingly, the court blamed Aikens, rather than itself, for creating the statute of limitations issue. As the court would have it, the timeliness problem resulted not from its own mistake, but from Aikens's failure to anticipate the same.

. There is simply no basis for the district court’s theory that Colonel Aikens should have foreseen its error and proceeded accordingly. Although the court found that Aikens and his lawyer "must have known that [Aikens] would face the ABCMR exhaustion issue in his case,” Rule 60(b) Order 7, that finding stops well short of the proposition that Aikens should have expected the court to erroneously dispose of that issue. And indeed, once Aikens assessed the exhaustion issue, he concluded — correctly—that the ABCMR was powerless to award him relief.

. Notably, we have also observed that a “mistake” within the meaning of clause (1) of Rule 60(b) — authorizing relief from judgment because of "mistake, inadvertence, surprise, or excusable neglect” — may include a mistake made by the court itself. See United States v. Williams, 674 F.2d 310, 313 (4th Cir.1982) ("In certain limited circumstances, the word 'mistake' in Rule 60(b) has ... been read to include mistakes by the court.”). At first blush, this notion might seem to hurt Aikens, because the Supreme Court has indicated that clause (1) and clause (6) "are mutually exclusive.” See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 393, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (citing Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 & n. 11, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988)). In deeming a movant to be entitled to Rule 60(b) relief because of a court’s mistake, however, we have relied on clause (6). See Compton, 608 F.2d at 104 & n. 15 (declining to resolve whether court’s mistake constituted clause (1) "mistake,” because relief was available under clause (6)); see also White, 888 F.2d at 1041 (determining, without mentioning clause (1), that clause (6) relief was available to remedy court’s mistake); cf. Williams, 674 F.2d at 312-13 (concluding that court’s purported error was not type of "mistake” that would justify clause (1) relief). Moreover, the rationale for deeming clause (1) and clause (6) to be mutually exclusive — prohibiting parties from attempting to utilize clause (6) to avoid clause (l)’s one-year limitations period — is not implicated here because Aikens filed his Rule 60(b) request within seven months of the Dismissal Order. See Pioneer Inv. Servs., 507 U.S. at 393, 113 S.Ct. 1489 (recognizing that, because clauses (1) and (6) are mutually exclusive, "a party who failed to take timely action [under clause (1) ] may not seek relief more than a year after the judgment by resorting to [clause (6) ]”); see also Fed.R.Civ.P. 60(c)(1) (allowing one year for clause (1) motion but "reasonable time” for clause (6) motion). Additionally, we have recognized that, because Rule 60(b)’s "grounds for relief often overlap,” courts are "free ... to do justice in cases in which the circumstances generally measure up to one or more itemized grounds.” Werner v. Carbo, 731 F.2d 204, 207 (4th Cir.1984) (citing Compton, 608 F.2d at 102). As such, although it may also have been proper for Aikens to rely on clause (1), it was not at all inappropriate for him to invoke clause (6).

. The district court, for its part, unjustifiably equated this matter to decisions in which "[t]he Supreme Court and the Fourth Circuit have denied Rule 60(b)(6) relief when the moving party made a tactical choice that later proved unwise.” Rule 60(b) Order 6 (citing Ackermann v. United States, 340 U.S. 193, 200, 71 S.Ct. 209, 95 L.Ed. 207 (1950) (movant made “voluntary, deliberate, free, untrammeled choice” not to file timely appeal based on belief he would have to sell home to pay costs); Schwartz v. United States, 976 F.2d 213, 218 (4th Cir.1992) (movant made "calculated, free, and deliberate” decision to settle dispute)). More specifically, the court relied on inapposite decisions for the proposition that Colonel Aikens could not make “deft use of Rule 60(b)(6)” to evade "time limitations that otherwise apply.” Id. at 8 (citing, inter alia, Dowell v. State Farm Fire & Cas. Auto. Ins. Co., 993 F.2d 46, 47-48 (4th Cir.1993) (movant failed to timely request certification of state law question or appeal adverse judgment); Home Port Rentals, Inc. v. Ruben, 957 F.2d 126, 133 (4th Cir.1992) (movant sought clause (6) relief from default judgment for "excusable neglect” to circumvent clause (1) time limitations)). Neither these nor any other applicable authorities support the notion that Colonel Aikens’s failure to foresee and safeguard against the district court's error constitutes an "unwise tactical choice” foreclosing Rule 60(b)(6) relief, or that Aikens cannot make "deft use of Rule 60(b)(6)” to remedy the timeliness problem directly resulting from the court’s mistake.

. In dismissing Colonel Aikens’s § 1983 claim for failure to exhaust intraservice remedies, the district court asserted that it "acted in accordance with a veritable wall of Fourth Circuit precedent requiring such exhaustion.” Rule 60(b) Order 7. In this regard, the court perhaps goes so far as to suggest that it did not actually err in its exhaustion ruling (a proposition pursued on appeal by Ingram and von Jess). See Br. of Appellees 22 (contending that there can be no Rule 60(b) relief premised on a "mistake” made by the court, because the "court's conclusion that Aikens was required to exhaust his intraservice administrative remedies ... was correct under Fourth Circuit precedent”).
Perhaps if Aikens had appealed the dismissal, we would have reversed the district court's ruling that intraservice remedies were available and required to be exhausted. But we might instead have affirmed and Aikens would have ended up before the ABCMR anyway — the more likely outcome if the district court indeed "acted in accordance with a veritable wall of Fourth Circuit precedent.” In either case, our decision could only have constituted a prediction — and not the definitive word — on whether the ABCMR possessed jurisdiction. See supra note 1. As such, it was entirely reasonable for Aikens to proceed directly to the ABCMR and then return to the district court on his Rule 60(b) motion.

. In his separate concurring opinion, my good colleague admonishes that I have somehow interpreted "Supreme Court precedent a bit too broadly,” surmising that the Court has stopped short of imposing an ironclad rule mandating the sua sponte entiy of a stay whenever a case is referred to an administrative agency under the primary jurisdiction doctrine. Ante at 505-06. But the only exceptions specifically approved by the Supreme Court to its pronouncement in General American that district courts should stay such actions pending referral are cases over which the agency has exclusive jurisdiction, or cases where Congress has afforded no remedy through the agency or the courts. See Mich. Nat’l, 419 U.S. at 5 n. 2, 95 S.Ct. 10 (citing Pan American World Airways v. United States, 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325 (1963); Montana-Dakota Util. Co. v. Nw. Pub. Serv. Co., 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912 (1951)). Patently, neither of those exceptions to the Court’s mandate apply here. Insofar, then, as the concurrence suggests that the district court in this case, in the exercise of its ordinary discretion, was free to ignore the established "common practice” in the federal courts, see Mich. Nat'l at 4, 95 S.Ct. 10, the concurrence is simply incorrect.

. This in spite of the majority's quotation, ante at 500-01, of a Supreme Court dissenting opinion to support its supposition that Rule 60(b)(6) is subject to “a very strict interpretation” that admits of relief in extraordinary circumstances that “only truly” fit the bill.

. As the concurrence points out, ante at 506-07, Aikens candidly admits in his Amended Complaint that Army investigators utilized the ill-gotten and stolen emails to substantiate certain unflattering allegations against him. Importantly, however, Aikens has never admitted the accuracy of the underlying allegations. In assessing whether to dismiss pursuant to Rule 12(b)(6), the district court was bound to view the facts alleged in the Amended Complaint in the light most favorable to Aikens. See Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir.2009). The record underwent no further development before the ABCMR, so in deciding whether to grant Aikens relief pursuant to Rule 60(b)(6), the court would have been constrained to again give him the benefit of the doubt. Of course, to the extent that Aikens's own conduct would have been relevant to his claims against Ingram and von Jess, the district court could have resolved all doubt by permitting the case to proceed.

. Accord, Heyman v. M.L. Mktg. Co., 116 F.3d 91, 94 n. 3 (4th Cir.1997) (citing Nat'l Credit Union Admin. Bd. v. Gray, 1 F.3d 262, 264 (4th Cir.1993)).

. I am not unmindful that, in reviewing all sorts of rulings for abuse of discretion, we have habitually insisted that we will not substitute our judgment for that of the district court. See, e.g., United States v. Mason, 52 F.3d 1286, 1289 (4th Cir.1995). I confess that the rule derived from Mason seems of little practical use, in that any time we disturb a judgment on abuse-of-discretion grounds we are necessarily substituting what we consider to be a more sound judgment for that rendered below. What we really mean is that when two outcomes are each within the realm of reason, we will not substitute our reasonable result for the similarly plausible one reached by the district court. The question is how much leeway each of us, as an appellate judge, is willing to give a trial judge in a particular case. My friend Judge Davis, in his fine dissenting opinion, ably and cogently illustrates the point through Judge Friendly's musings and otherwise. I think we would all agree that, in general, it is a good idea to let those judges on the front lines dispose of their caseloads without undue interference from those of us one step removed. But every so often, a case arises to snap us out of our rubber-stamp reverie, and for me, this is such a case. I am not content to lend my imprimatur to what occurred below under the guise of deference; instead, I have found myself stirred to action against the inertia of affirmance. That I would vacate the order on appeal stems directly from my definite and firm conviction that the district court made a clear error of judgment in bypassing the opportunity to easily and efficiently correct its earlier mistake of law, thereby serving substantial justice.